**Paul E. BLACK, Plaintiff–Appellant,**

v.

**TIC INVESTMENT CORP.; Stratton Georgoulis, Individually; and James H. Slife, Individually, Defendants–Appellees.**

No. 88–2658.

United States Court of Appeals, Seventh Circuit.

Submitted March 30, 1990.*

Decided April 18, 1990.

Richard A. O'Leary, Wheaton, Ill., for plaintiff-appellant.

David A. List, Eugene A. Schoon, Sidley & Austin, Chicago, Ill., Charles C. Frederik-

---

* The Court has granted the Appellant's motion to waive oral argument. This appeal has been submitted on the briefs and the record. Circuit Rule 34(e), 34(f).

sen, Jonathan C. Wilson, Haynes & Boone, Dallas, Tex., for defendants-appellees.

Before CUMMINGS and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

The controlling issue in this case is whether principles of estoppel apply to force an employer to provide severance benefits under an ERISA plan. We hold that estoppel principles do apply and therefore reverse the judgment of the district court.

The facts of this case are not in dispute. Paul E. Black was a salaried employee of the White Farm Equipment Company (White), a subsidiary of White Motor Corporation, from April of 1964 until his termination on April 24, 1981. During most of that time, White offered its salaried employees a "Severance Pay Allowance Plan" under which terminated employees would receive payments based on the length of their service with the company. Unfortunately, the company fell on hard times, and on September 4, 1980, White and its parent corporation filed a bankruptcy petition under Chapter 11 in the Bankruptcy Court for the Northern District of Ohio. Venue was later transferred to the Bankruptcy Court for the Northern District of Illinois. On October 2, 1980, White informed its employees that the severance pay plan was suspended as of September 4, 1980. The written notice provided that, "Severance payments for employees laid-off or terminated after September 4, 1980 and after will not be issued until further notice."

In December 1980, White was sold to the defendant TIC Investment Company, whose chairman, defendant Stratton Georgoulis, became chairman of White. Defendant James Slife was named Vice–President of Finance. On February 27, 1981, salaried employees were notified that the severance pay plan would be eliminated entirely as of March 1. Black was terminated by White on April 24, 1981. His termination notice stated: "Your severance pay eligibility as of September 3, 1980 is 5½ months. However, payment of this amount ($18,469) is subject to the approval processes required under Chapter 11. This amount will be due and payable to you if and when the courts approve such payments." White officials told Black that he could file a claim in the bankruptcy court for severance benefits, or the company would give him two months' salary continuation without the need to file a claim. Company records do not indicate that a similar offer was made to other salaried employees terminated after March 1. Black chose to file a bankruptcy court claim rather than take the offer of immediate cash. White objected to all bankruptcy court claims for severance pay for employees terminated after March 1, including Black's claim, but it did not object to the severance pay claims of any employees whose active service ended earlier. The bankruptcy court approved payment of 65% of each severance pay claim not objected to by White.

A reorganization plan for White was approved on October 30, 1981, but on May 2, 1985 an involuntary Chapter 7 petition was filed against the reorganized debtor. The Chapter 7 proceeding was converted to Chapter 11. On March 27, 1986, the bankruptcy judge dismissed Black's claim for severance pay without prejudice to file a new claim in the new Chapter 11 case by April 11, 1987. Black filed this action in the district court on September 30, 1986 seeking a judicial declaration that the defendants were fiduciaries under an ERISA plan, that they had breached their fiduciary duty by objecting to his bankruptcy claim, and that they were estopped to deny the validity of his severance pay claim. Black does have a claim pending in the current bankruptcy case. The district court had jurisdiction of the case under ERISA, 29 U.S.C. § 1132(e)(1).

In the district court, the parties entered a stipulation as to the facts, and filed cross motions for summary judgment. The court held that the Severance Pay Allowance Plan was a welfare benefit plan under ERISA, and that the employer could unilaterally eliminate a welfare plan without violating the Act. *Young v. Standard Oil*

*(Indiana)*, 849 F.2d 1039 (7th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). The court held that the decision to treat persons terminated before March 1 differently from those terminated later was not arbitrary and capricious. Last, the court held Black's argument that the defendants were estopped failed because estoppel cannot be raised in ERISA cases. Although the district court recognized that this Court had not spoken to this precise question, it chose to follow the majority of the district court decisions within the Circuit, and ruled that estoppel is not applicable to ERISA actions.

■ To determine whether estoppel is applicable to ERISA actions, our first resort would ordinarily be to the statute itself. In this case, the statute is silent. This is not so much a question of statutory interpretation as a question of public policy. Is it better to allow estoppel in employee benefit cases or to bar them? In answering such a question, pre-ERISA cases and cases decided under the Labor–Management Relations Act will be equally instructive as cases deciding ERISA issues.

Our only previous comment on this question was in a footnote in *Reiherzer v. Shannon*, 581 F.2d 1266, 1267 n. 1 (7th Cir.1978).

> In ruling in Reiherzer's behalf, the district court found that the Plan and Shannon were estopped to deny plaintiff's right to a disability pension. We have serious doubts, however, as to the advisability of employing estoppel principles in determining whether an individual will receive benefits from an employer-funded pension plan. The vast majority of courts considering this issue have rejected the use of estoppel principles in cases of this sort. [citations omitted]. Under the provisions of the Labor–Management Relations Act, § 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B), employer funding of union pension funds is legal only if eligibility provisions are set forth "in a *written* agreement with the employer." *Id.* (emphasis supplied). To allow the conduct or statement of persons entrusted with administering an employer-funded union

pension fund to alter pension eligibility could seriously undermine the "written agreement" requirement of § 302(c)(5)(B).

We went on to affirm the district court's decision on alternative grounds. On the other hand, we have also affirmed the decision of the district court in *Scheuer v. Central States Pension Fund*, 358 F.Supp. 1332 (E.D.Wis.1973) and 394 F.Supp. 193 (E.D.Wis.1975), *aff'd without opinion* 570 F.2d 347 (7th Cir.1977). The district court in *Scheuer* held that a pension fund's promise to an independent contractor that he would be covered if he made contributions estopped the fund from relying on the language of the Plan which forbid coverage of contractors. Today we address the question squarely, and we hold that, at least for single-employer unfunded welfare benefit plans, estoppel principles are applicable.

Our suggestion in *Reiherzer* that estoppel is inappropriate for pension cases was dictum, based on the fact that a majority of courts at that time had ruled that way. Since then, the trend among courts has been reversed to allow the use of estoppel. Some of the cases cited in the *Reiherzer* footnote were from circuits which have since adopted the opposite position, specifically the Ninth Circuit, *see Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985); *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986), the Eighth Circuit, *Landro v. Glendenning Motorways*, 625 F.2d 1344 (8th Cir.1980), and the Sixth Circuit, *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir.), *cert. denied* 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987) (case decided under the LMRA). Also allowing estoppel to be raised are the First Circuit, *Cleary v. Graphic Communications Int'l Union*, 841 F.2d 444, 447–49 (1st Cir.1988) (recognizing applicability of estoppel principles, but holding that pension fund's acts did not constitute a representation that benefits would be paid); the Second Circuit, *Haeberle v. Board of Trustees*, 624 F.2d 1132, 1139 (2d Cir.1980) (recognizing estoppel, but requiring strict proof of its elements); and the Third Circuit, *Rosen v. Hotel and Restaurant Employees & Bartenders Un-*

*ion*, 637 F.2d 592, 598 (3d Cir.), *cert. denied* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981) (LMRA case concerning a collectively-bargained pension plan). Holding the contrary view are the Fourth Circuit, *Holland v. Burlington Ind., Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985), *affirmed without opinion* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986) and *cert. denied* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); the Tenth Circuit, *Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1264–66 (10th Cir.1988) (estoppel cannot be used to modify the written terms of an ERISA plan) and the Eleventh Circuit, *Nachwalter v. Christie*, 805 F.2d 956, 960–61 (11th Cir. 1986) (same).

■ It should be noted at the outset that estoppel principles generally apply to all legal actions. It is an exception to that general rule to deny the use of the doctrine. The reasons for the general application of estoppel are simple enough—the doctrine prevents a party from benefitting from its own misrepresentations. Yet even among courts that recognize the availability of estoppel in ERISA cases, there is real resistance to the use of that doctrine. *See, e.g., Haeberle v. Board of Trustees*, 624 F.2d 1132, 1139 (2d Cir.1980). The reason ordinarily cited for this reluctance (and for earlier refusals to allow estoppel at all, *see, e.g. Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir.1976)) is a concern for the actuarial soundness of the ERISA plan. There are two types of ERISA plans: pension plans, which are funded and have strict vesting and accrual requirements; and welfare plans such as the one involved in this case, which have no such requirements. *See Young v. Standard Oil (Indiana)*, 849 F.2d 1039 (7th Cir.), *cert. denied* — U.S. ——, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). In the case of an unfunded welfare plan, there is no particular fund which is depleted by paying benefits. Thus there is no need for concern about the Plan's actuarial soundness.

One scholar, noting the trend toward allowing use of estoppel in ERISA cases, has noted that where estoppel is disallowed, the pension plan involved is ordinarily a multi-employer plan. S. Bruce, *Pension Claims: Rights and Obligations* 404 (1988). The reason for reluctance in such cases is the fact that the plan has multiple fiduciaries with control over a common fund. To allow one employer to bind the fund to pay benefits outside the strict terms of the Plan would be to make all the employers pay for one employer's misrepresentations, and to the extent that such payments damage the actuarial soundness of the Plan, it hurts all the employees as well. It could even encourage employers to make intentional misrepresentations so as to bind the Plan to make improper payments in favor of their own employees. The Severance Pay Allowance Plan in this case involves only one employer. There is no danger that other employers will be hurt by holding White to its representations.

In cases such as these where there is no danger that others associated with the Plan can be hurt, there is no good reason to breach the general rule that misrepresentations can give rise to an estoppel. There is no reason for the employee who reasonably relied to his detriment on his employer's false representations to suffer. There is no reason for the employer who misled its employee to be allowed to profit from the misrepresentation. We hold, therefore, that estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA. We express no opinion as to the application of estoppel principles in other situations.

■ We turn next to the question of whether White is estopped to deny Black's eligibility for benefits in this case. An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation. *Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *see also Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, 597 (3d Cir.), *cert. denied* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981) (representation of fact

cannot be denied if denial would cause injury to the relying party). The statement in Black's termination notice that he had accrued $18,469 in severance benefits, and that those payments would be made as soon as they were approved by the bankruptcy court was misleading. No fair reading of the language would give a casual reader notice that White intended to contest any claim. Black relied to his detriment by refusing the offer of two months' salary continuation. These facts are drawn from the stipulation agreed to by the parties in connection with the motion for summary judgment.

After that stipulation was entered, White presented the affidavit of defendant James Slife along with its second response to the motion for summary judgment. Slife stated that when he offered Black two months' salary continuation, he told Black that "there was uncertainty and question as to whether he was entitled to severance pay." To the contrary, plaintiff submits that the written notice of termination stated that his benefits "will be due and payable to you if and when the [bankruptcy] courts approve such payments" and that such approval was concededly given. Consequently, plaintiff states that Slife's affidavit means that Black was advised only as to the uncertainty of court approval of payments (Reply Br. at 11–12).

■ Black also argues that we may not consider Slife's affidavit because the district court never allowed him an opportunity to respond to it. Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond. *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 409–10 (1st Cir. 1984).

In view of its tardy submission, it is for the district court to decide whether or not to consider Slife's affidavit. If the affidavit is accepted, then after Black is permitted to respond the district judge must decide whether Black's reliance on White's apparent willingness to allow the severance pay claim was reasonable. We remand for appropriate proceedings.

REVERSED AND REMANDED.