John G. LOCKREY, Plaintiff,

v.

**LEAVITT TUBE EMPLOYEES' PROFIT SHARING PLAN, an Employee Benefit Plan; Leonard Donofrio, Roy Herman, Kenneth Leavitt, William Leavitt and Leon Meyer, Individually and as Members of the Fiduciary Committee Established Under the Leavitt Tube Employees' Profit Sharing Plan, Defendants.**

No. 88 C 8017.

United States District Court,
N.D. Illinois, E.D.

Oct. 15, 1990.

Amended Nunc Pro Tunc
Nov. 9, 1990.

Lee T. Polk, Kathleen Schwappach, Walter W. Miller, Murphy, Smith & Polk, Chicago, Ill., for plaintiff.

Jeffrey Lennard, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is an ERISA action brought by John G. Lockrey to recover additional benefits allegedly due pursuant to the Leavitt Tube Employees' Profit Sharing Plan. The lawsuit originally asserted claims for both breach of fiduciary duty and estoppel. In a Memorandum Opinion and Order of September 14, 1989, the Court dismissed the estoppel claim on the ground that estoppel was not available in an ERISA action. On April 18, 1990, the Seventh Circuit Court of Appeals, in the case of *Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir.1990), recognized the availability of estoppel in at least some ERISA actions. On May 9, 1990, this Court *sua sponte* ordered the parties to submit briefs addressing whether *Black* warranted reinstatement of plaintiff's ERISA claim. The Court now holds that *Black* allows estoppel in the context of this case.

### II. FACTS

As in its decision on defendants' motion to dismiss, the Court accepts as true the factual allegations of the complaint. Plaintiff was born on April 2, 1928. In 1962, he became employed by Leavitt Tube Company, Inc. He is currently employed by that company's successor, UNR, Inc.

Since January 1, 1969, plaintiff has been a participant in the Leavitt Tube Employees' Profit Sharing Plan ("the Plan"). The Plan is structured around individual accounts set up for its participants and around a trust fund composed of all of the property held by the Plan's Trustee. Responsibility for operating the Plan is vested in a fiduciary committee ("the Plan Committee").

Section 2.2 of the Plan defines a participant's accrued benefit as the "Participant's interest in the Trust composed of such Participant's Accounts." Section 2.2 further provides that the accrued benefit shall be valued according to its value "as adjusted on the coinciding or immediately preceding Valuation Date." The valuation dates are defined in Section 2.51 as "March 31, June 30, September 30 and December 31 of each year and such additional dates as the Committee shall deem appropriate." Section 7.4(d) allows a fully vested participant who has reached the age of 59½ to withdraw from the Plan, with the consent of the Plan Committee and to receive distribution of his accrued benefit.

In early September, 1987, a group of participants, including plaintiff, attended a meeting with defendant Leonard Donofrio, a member of the Plan Committee. At that meeting, Donofrio stated that when plaintiff reached the age of 59½ on October 2, 1987, he could withdraw from the plan and receive an immediate distribution of benefits. If he did so, the amount of his distribution would be determined as of the last quarterly valuation date—presumably September 30, 1987. Donofrio also advised plaintiff that he could wait until later in the quarterly period to effect his withdrawal. If plaintiff waited until late December, according to Donofrio, plaintiff would have the choice of withdrawing then, and having his benefits determined according to the September 30, 1987 valuation date, or waiting until early January, 1988, and having his benefits determined as of the December 31, 1987 valuation date. The value of plaintiff's benefits determined according to the September 30, 1987 valuation date was approximately $130,000.

Based on Donofrio's statements, plaintiff elected to wait until later in the quarter before withdrawing from the Plan. On October 19, 1987, plaintiff's best-laid plans were destroyed when the stock market crashed, with the Dow Jones Industrial Average dropping over 500 points. In early November, plaintiff elected to withdraw from the Plan.

Shortly after plaintiff elected to withdraw, the Plan Committee established additional valuation dates for the fourth quarter of 1987. Those dates were October 20, October 31, November 10, November 20, November 30, December 10 and December 20. Donofrio then informed plaintiff in writing that plaintiff's benefits would be determined as of the newly established October 31 valuation date. The resulting value of plaintiff's benefits was $97,511.67.

On September 19, 1988, plaintiff filed this action against the Plan and members of the Plan Committee. Count I of the original complaint alleged that defendants breached their fiduciary duties by failing to calculate plaintiff's benefits in accordance with the Plan's provisions and defendants' representations. Count II alleged that defendants breached their fiduciary duties by retroactively decreasing accrued benefits. Upon defendants' motion to dismiss, the Court noted that each of the two counts seemed to subsume more than one claim. Both counts alleged breach of fiduciary duty, but Count I also appeared to include an estoppel claim and Count II also appeared to include a claim for improper decrease of benefits under 29 U.S.C. § 1054(g)(1). The Court dismissed the estoppel claim and the § 1054(g)(1) claim with prejudice and dismissed the fiduciary duty claims without prejudice. In dismissing the estoppel claim, the Court relied principally on dictum in *Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir.1978), in which the Seventh Circuit stated that it had "serious doubts ... as to the advisability of employing estoppel principles in determining whether an individual will receive benefits from an employer-funded union pension plan." 581 F.2d at 1267 n. 1.

On October 18, 1989, plaintiff filed an amended one-count complaint alleging breach of fiduciary duty. Defendants again moved to dismiss. The Court denied that motion in its Memorandum Opinion and Order of December 21, 1989. On May 9, 1990, after noticing the *Black* opinion, the Court requested additional briefs on the estoppel issue.

### III. AVAILABILITY OF ESTOPPEL

■ The doctrine of estoppel has traditionally been frowned upon in the context of ERISA actions seeking additional benefits on the basis of oral representations to beneficiaries. *See, e.g., Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1265 (10th Cir.1988); *Nachwalter v. Christie,* 805 F.2d 956, 959–61 (11th Cir.1986); *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1041 (2d Cir. 1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986); *Aitken v. IP & GCU–Employer Retirement Fund,* 604 F.2d 1261, 1266–69 (9th Cir.1979); *Phillips v. Kennedy,* 542 F.2d 52, 55 n. 8 (8th Cir. 1976). *See also Reiherzer,* 581 F.2d at 1267 n. 1 (7th Cir.1978) (hinting, but not finding, that estoppel would not apply). These courts emphasized the need to protect the actuarial soundness of benefit plans and ERISA's requirement that plan provisions be in writing.

Some courts, however, have now allowed estoppel claims to be brought in ERISA actions in certain limited circumstances. Thus in *Black,* the Seventh Circuit held that estoppel claims are available, at a minimum, where benefits are sought from a single-employer unfunded welfare benefit plan. 900 F.2d at 115. The court reasoned that in such an instance, there is no particular fund which is depleted by the payment of benefits, so there is thus no concern about the plan's actuarial soundness and no danger that other employers or participants associated with the plan will be hurt. *Id. See also Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 598 (3d Cir.1981) (estoppel was available with respect to multi-employer pension fund where actuarial concerns not implicated and plaintiff had made contribu-

tions), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). The court stated that the availability of estoppel "is not so much a question of statutory interpretation as a question of public policy." *Black,* 900 F.2d at 114. The Eleventh Circuit has taken a somewhat narrower approach, focusing on ERISA's writing requirement rather than on the underlying policies, and held that estoppel is available where oral representations are relied on to interpret, but not to modify, the written terms of the plan. *See Alday v. Container Corp. of America,* 906 F.2d 660, 666 (11th Cir.1990); *Kane v. Aetna Life Insurance,* 893 F.2d 1283, 1285–86 (11th Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). Other courts have drawn yet other distinctions to determine whether estoppel is available. *See Cleary v. Graphic Communications Int'l Union Supplemental Retirement and Disability Fund,* 841 F.2d 444, 447–49 (1st Cir.1988) (implying that estoppel is available against multi-employer fund where formal representations are made by someone who has authority to bind fund); *Davidian v. Southern California Meat Cutters Union and Food Employees Benefit Fund,* 859 F.2d 134, 136 (9th Cir.1988) (estoppel available against trustees and administrator but not against fund); *Vogel v. Independence Federal Savings Bank,* 728 F.Supp. 1210, 1230–32 (D.Md.1990) (estoppel applies to question of coverage but not to questions concerning benefits). Still other courts have begun to allow estoppel in certain ERISA actions without discussing the rationale or identifying which ERISA contexts are open to estoppel claims. *See, e.g., Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1355 (8th Cir.1980) (allowing estoppel against single-employer pension plan).

Because this court is within the jurisdiction of the Seventh Circuit, it must follow the *Black* approach and look to whether application of estoppel in a specific instance raises concerns of harm to other employers and participants, and specifically concerns of actuarial soundness of the plan. The plan in this case is centered around individ-

ual accounts maintained for each participant. Those accounts consist of contributions from both the employee and the employer. The accounts are pooled into a trust fund for investment purposes, and profits and losses to that fund are distributed among the individual accounts.

*Black* found that estoppel may apply in the context of a single-employer unfunded welfare benefit plan. Like *Black*, this case involves a single-employer plan. Unlike *Black*, this case involves a pension plan rather than a welfare benefit plan. However, plaintiff maintains that this distinction is immaterial because the pension plan, like the welfare benefit plan in *Black*, centers around individual accounts. Defendant maintains that the plan in this case is distinct from that in *Black* because participants' withdrawals affect the stability of the plan due to the pooling of accounts for investment purposes.

The Court agrees with plaintiff that this case is controlled by *Black*. It is not clear to what extent, if any, the *Black* plan involved some measure of sharing of profits and losses among participants' accounts. The *Black* court, however, was primarily concerned with the actuarial soundness required by defined benefit plans, a common type of multi-employer pension plan. Where a fund of a certain size and growth rate must be maintained in order to deliver benefits which have previously been promised, the stability of the plan is more threatened by unforeseen liabilities, such as those resulting from estoppel claims, than is a plan which defines benefits based on the amounts in individual accounts. Examining the policies described in *Black*, this Court concludes that *Black* makes estoppel available in this case. As in *Black*, this case does not implicate concerns of actuarial soundness. Any minor differences between this case and *Black* in the way individual accounts are maintained are not sufficient to remove this case from *Black*'s reasoning.

Certainly, as defendant argues, a successful estoppel claim would have an effect on the accounts of other participants. The effect would not, however, be an actuarial effect serving to threaten established definitions of the amount of future benefits. Furthermore, to use this case as an example, plaintiff's estoppel claim does not involve an unforeseen liability. If plaintiff had never heard the representation concerning valuation dates, he may well have withdrawn from the plan on October 2, before the stock market crash. Allowing plaintiff to assert an estoppel claim leaves the other participants in substantially the same position as they would have been in if plaintiff had never been exposed to the representation.

In addition, the dangers of large reductions in benefits to other participants posed by the allowance of estoppel claims may be controlled by the application of the traditional elements of estoppel. The cases in which liability seems to be the most unreasonable will be the same cases in which it will be the most difficult for a plaintiff to prove the reasonable reliance necessary to state an estoppel claim. Thus application of the law governing estoppel imposes limits on the extent to which the other accounts will be damaged by successful estoppel claims, and a complete prohibition on estoppel claims altogether would appear rather draconian.

Accordingly, the Court concludes that estoppel is available with respect to the type of plan involved in this case.

## IV. CLAIM FOR ESTOPPEL

■ Having concluded that estoppel is available, the Court must determine whether plaintiff has alleged facts which support a claim for estoppel. "An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Black*, 900 F.2d at 115.[1]

---

1. Courts have used varying formulations of a three or four-part test for estoppel in the ERISA context. For example, in *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985), the court listed the following elements: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the

In order to address defendants' contention that plaintiff's allegations do not give rise to an estoppel claim, it is necessary to review the way in which this issue was briefed. When this Court noticed the Seventh Circuit's decision in *Black*, it sua sponte ordered the parties to submit cross briefs by May 25, 1990, addressing whether *Black* resurrected plaintiff's estoppel claim by making estoppel available in this type of ERISA case. Minute Order of May 9, 1990. Plaintiff filed a brief on May 25 which argued that estoppel was available in light of *Black*. Defendants filed a brief on the same day which argued not only that estoppel remained unavailable, but also that even if estoppel were available, plaintiff had not stated a claim for estoppel. The basis for the latter argument was that plaintiff had not alleged—and could not allege—reasonable reliance because the language of the Plan made it clear that additional valuation dates could be established.

Due to the briefing schedule imposed after the *Black* decision, plaintiff had never had an opportunity to address defendants' argument that the complaint did not state an estoppel claim. The Court accordingly requested further briefing on this argument, allowing plaintiff until September 27 to file a supplemental brief in response to defendants' argument and defendants until October 4 to file a supplemental brief in reply. Minute Order of September 13, 1990. On September 27, plaintiff filed a brief responding to defendants' argument that plaintiff had not alleged reasonable reliance. On October 5, defendants filed their reply brief. In that brief, however, defendants did not revisit their reasonable reliance argument; instead, defendants argued that Donofrio had not made a misrepresentation to plaintiff and had not intended to mislead plaintiff. Plaintiff, of course, has had no opportunity to respond to this new argument.

In support of their original argument that plaintiff had not alleged reasonable reliance, defendants rested on the case of *Ridens v. Voluntary Separation Program*, 610 F.Supp. 770 (D.Minn.1985). In *Ridens*, after a full trial, the court found that a plaintiff challenging a denial of severance benefits had not proven estoppel because he had not shown reasonable reliance on the relevant statements. The statements had been made by an individual who had no authority to bind the plan, and plaintiff was aware—through his possession of the plan and his familiarity with corporate procedures—that the individual did not have such authority. 610 F.Supp. at 777. Plaintiff argues that *Ridens* supports his position rather than that of defendants because *Ridens* was decided after a full factual hearing and because *Ridens*, unlike this case, involved statements made by an individual who had no authority to bind the plan. Furthermore, the statements alleged in *Ridens* had the effect of granting an exception to the plan rather than giving an arguably consistent interpretation of the plan.

The Court agrees with plaintiff that *Ridens* does not control this case. The Court must view the alleged facts in the light most favorable to plaintiff, and the Court cannot say that those facts do not, as a matter of law, demonstrate reasonable reliance. *Cf. Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986) (evidence in record was insufficient for court to determine whether estoppel elements were satisfied). Furthermore, defendants have apparently conceded the validity of plaintiff's arguments by failing to address them in their reply brief. *See Gillman v. Burlington Northern Railroad Co.*, 673 F.Supp. 913, 918 (N.D.Ill.1987) (denying motion where movant failed to reply to counter-arguments). Accordingly, the Court rejects defendants' argument that

estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." In *Cleary v. Graphic Communications International Union*, 841 F.2d 444 (1st Cir. 1988), the court stated: "The principle of estop-

pel allows recovery upon a showing of (1) a representation of fact made to the plaintiff; (2) a rightful reliance thereon; and (3) injury or damage to plaintiff resulting from a denial of benefits by the party making the representation."

plaintiff has failed to allege reasonable reliance.

 Defendants' new argument is that plaintiff has not alleged a misrepresentation or intent to mislead. Defendants contend that because additional valuation dates had not yet been established at the time of Donofrio's statements, those statements were correct when they were made. Defendants fail to recognize that the alleged statements went beyond a mere description of the plan as it existed, and included representations to plaintiff as to how his benefits would, in the future, be computed if he took certain actions. The Court need not resolve this issue, however, for defendants did not raise this argument until their reply brief, and they thus have waived the argument. *See Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990); *W.E. O'Neil Construction Co. v. National Union Fire Insurance Co.*, 721 F.Supp. 984, 999–1000 (N.D.Ill.1989).[2]

## V. CONCLUSION

For the reasons described above, the Court finds that estoppel is available to plaintiff and that plaintiff's factual allegations support his claim for estoppel. Accordingly, the Court vacates its opinion of September 14, 1989, to the extent that opinion held that an estoppel claim was unavailable. Plaintiff is granted leave to amend his complaint to reinstate his estoppel claim.

---

**2.** Defendants' reply memorandum begins, "This Court has requested further briefing on an issue which can be simply distilled: can there be a cognizable equitable estoppel claim in an ERISA context where there is no allegation that the defendant made a misrepresentation or intended to mislead the plaintiff?" It is possible that defendants merely misunderstood the reason for which the Court requested additional briefing. However, the alternative to finding a waiver of defendants' argument is to accept further briefing. This alternative would hardly be fair to plaintiff or the Court in light of the amount of briefing which has already been performed on the estoppel issue. At some point the briefing must stop and the case must proceed.