John G. LOCKREY, Plaintiff,

v.

LEAVITT TUBE EMPLOYEES' PROFIT SHARING PLAN, an employee benefit plan; Leonard Donofrio, Roy Herman, Kenneth Leavitt, William Leavitt, and Leon Meyer, individually and as members of the fiduciary Committee established under the Leavitt Tube Employees' Profit Sharing Plan, Defendants.

No. 88 C 8017.

United States District Court,
N.D. Illinois, E.D.

July 19, 1991.

Lee T. Polk, Kathleen Schwappach, Walter W. Miller, Murphy, Smith & Polk, Chicago, Ill., for plaintiff.

Jeffrey Lennard, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is an ERISA action brought by plaintiff John G. Lockrey ("Lockrey") to recover additional benefits allegedly due to him pursuant to the Leavitt Tube Employees' Profit Sharing Plan (the "Plan"). Plaintiff's original complaint asserted claims for both breach of fiduciary duty and estoppel. In its Memorandum Opinion and Order of September 14, 1989, the Court dismissed the estoppel claim on the ground that estoppel was unavailable in an ERISA action. *See Lockrey v. Leavitt Tube Employees' Profit Sharing Plan*, 1989 WL 112674, 1989 U.S.Dist. LEXIS 10875 (N.D. Ill. Sept. 14, 1989). Subsequent to that decision, however, the Seventh Circuit recognized the availability of estoppel claims in at least some ERISA actions. *See Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir.1990). After further briefing on the impact of the *Black* decision on plaintiff's claim for estoppel, the Court, in its opinion of October 15, 1990, held that an estoppel theory was available to plaintiff in the circumstances of this case. The Court, therefore, vacated that portion of its earlier opinion dismissing plaintiff's estoppel claim. *See Lockrey v. Leavitt Tube Employees' Profit Sharing Plan*, 748 F.Supp. 662 (N.D.Ill.1990). Shortly thereafter, defendants filed the instant motion for partial summary judgment. Defendants contend in their motion that they are entitled to summary judgment on plaintiff's estoppel claim because plaintiff cannot establish the existence of a misleading representation by defendants upon which he relied. In response to defendants' motion, plaintiff filed his own motion for partial summary judgment on the estoppel claim. The Court will deny defendants' motion for partial summary judgment but will grant partial summary judgment in favor of plaintiff on Count I of plaintiff's original complaint.

### II. FACTS

The facts relating to the instant motions are largely undisputed. Plaintiff was born on April 2, 1928. (Plaintiff's Statement of Uncontested Facts ("Pl. 12(m)") ¶ 2.) He has been employed by the Leavitt Tube Division of UNR, Inc. or its predecessor continuously since 1962, and he has participated in the Plan continuously since 1969. (*Id.* at ¶¶ 1, 3.) At all times relevant hereto, the Plan has operated to provide deferred compensation benefits to UNR employees. The parties agree, therefore, that the Plan constitutes an employee benefit plan within the meaning of the ERISA statute. (*Id.* at ¶ 6.) As of December 31, 1987, the Plan held assets of $6,479,022.00 and covered 112 active participants. (*Id.* at ¶ 7.)

Section 2.2 defines a participant's accrued benefit in the Plan as the "Participant's interest in the Trust composed of such Participant's Accounts." That section further provides that "[t]he value of an accrued benefit at any time during any Plan Year shall be its value as adjusted on the coinciding or immediately preceding Valuation Date." (*Id.* at ¶ 8(b); Defendants' Statement of Uncontested Facts ("Def. 12(m)") ¶ 1(b).) The applicable valuation dates are defined in § 2.51 as "March 31, June 30, September 30 and December 31 of each year and such additional dates as the Committee shall deem appropriate."

(Pl. 12(m) ¶ 8(c); Def. 12(m) ¶ 1(c).) Section 7.4(b), (d) of the Plan permits a participant who has reached the age of 59½ to withdraw from the Plan with the consent of the Plan Committee. (Def. 12(m) ¶ 1(a); Pl. 12(m) ¶ 8(a).)

On or about June 6, 1986, the Plan Committee issued to participants a Summary Plan Description. Accompanying this document was a transmittal letter stating that participants having questions regarding the Plan could direct those questions either to Roy Herman ("Herman") or Leonard Donofrio ("Donofrio"), two members of the Plan Committee. (Pl. 12(m) ¶¶ 10–11.) As the Vice–President of Finance, Donofrio customarily fielded questions from participants regarding the Plan. (*See* Pl. 12(m) ¶ 15; Defendants' Response to Plaintiff's Statement of Uncontested Facts ("Def. 12(n)") ¶ 15.) In September 1987, plaintiff and several other Plan participants attended a meeting with Donofrio to discuss various matters relating to the operations of Leavitt Tube. At the conclusion of that meeting, there was a fifteen- to thirty-minute discussion relating to the Plan. (Pl. 12(m) ¶¶ 16–18.) In the course of this discussion and in response to a specific question relating to the ability of plaintiff to withdraw his benefits upon reaching the age of 59½ on October 2, 1987, Donofrio told plaintiff that he could withdraw from the Plan and receive an immediate distribution of benefits, valued as of September 30, 1987, the preceding quarterly valuation date. (*Id.* at ¶ 19.) Donofrio also stated that plaintiff could wait until the latter part of the fourth quarter of 1987 to decide whether to withdraw from the Plan and still have his account valued as of September 30. (*Id.* at ¶ 20.)

Plaintiff turned 59½ on October 2, 1987, and he therefore became eligible for an immediate withdrawal of his benefits from the Plan. (*Id.* at ¶ 22.) Valued as of September 30, 1987, the valuation date applicable on October 2, plaintiff's Plan benefits were worth $131,288.00. (*Id.* at ¶ 21.) Plaintiff did not elect to withdraw his benefits on October 2, however. Instead, in reliance on Donofrio's statements at the above-described meeting, plaintiff delayed an election to withdraw until later in the fourth quarter of 1987. (*Id.* at ¶ 23; Appendix to Pl. 12(m) at Ex. K, Lockrey Dep.Tr. at 80–81.) Between October 2, 1987 and the date of plaintiff's withdrawal election, however, the stock market suffered a significant decline, with the Dow Jones Industrial Average falling over 500 points on October 19, 1987. (Pl. 12(m) ¶ 24; Def. 12(m) ¶ 5.)

On November 2, 1987, plaintiff orally requested to withdraw from the Plan. He followed up with a written request on November 10. (Pl. 12(m) ¶ 25; Def. 12(m) ¶ 3.) On November 11, 1987, the Plan Committee, pursuant to § 2.51 of the Plan, created new valuation dates for the fourth quarter of 1987 and applied those dates to all post-crash claims. (Def. 12(m) ¶ 6.) The additional dates were October 20, October 31, November 10, November 20, November 30, December 10, and December 20, 1987. (Pl. 12(m) ¶ 26.) Prior to November 12, 1987, the Plan Committee never had designated additional valuation dates pursuant to § 2.51. (Def. 12(m) ¶ 9.) By letter dated November 12, 1987, Donofrio informed plaintiff that his request for withdrawal would be granted but that the value of his benefits would be determined by the new October 31, 1987 valuation date. (Def. 12(m) ¶ 7.) Lockrey requested that the Committee review this decision, and subsequent to such a review, the Committee affirmed its initial determination. (*Id.*) Valued pursuant to the October 31 valuation date, plaintiff's benefits under the Plan were worth $97,511.67, and plaintiff later received this amount. (Pl. 12(m) ¶ 29.)

Plaintiff filed the instant action against the Plan and the members of the Plan Committee on September 19, 1988. On defendants' motion, the Court dismissed with prejudice plaintiff's estoppel claim and its claim for an improper decrease of benefits pursuant to 29 U.S.C. § 1054(g)(1). On May 9, 1990, after reviewing the Seventh Circuit's opinion in *Black*, however, the Court requested further briefing on the estoppel issue. By its Memorandum and Opinion of October 15, 1990, the Court determined that, pursuant to *Black*, a claim

for estoppel was available with respect to the ERISA plan at issue in this case. The Court also rejected defendants' argument that plaintiff had failed to allege facts sufficient to state a claim for estoppel.

## III. ANALYSIS

On a motion for summary judgment, the moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1477 (7th Cir. 1990); Fed.R.Civ.P. 56(c). The Court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant, and where there are doubts as to whether a genuine factual dispute exists, the Court must resolve such doubts in favor of the non-moving party. *Burnham*, 910 F.2d at 1477. However, once the movant has satisfied its initial burden, the non-moving party then has the affirmative burden to come forward with evidence demonstrating that there is a genuine issue of material fact which must reach the factfinder. *Id.; Baucher v. Eastern Indiana Production Credit Association*, 906 F.2d 332, 334 (7th Cir.1990). A disputed fact is material when it is "outcome determinative under the governing law." *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir.1990); *see also Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir.1986). A fact is genuinely in dispute when " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Whetstine*, 895 F.2d at 392 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

### A.  *Defendants' Motion for Partial Summary Judgment.*

■ The basis for defendants' motion is relatively simple. Defendants contend that because Donofrio's statement accurately reflected the operation of the Plan at the time it was made, the statement cannot form the basis for an estoppel. In short, defendants submit that there must be a

misrepresentation or an intention to misrepresent a fact before an estoppel may be worked. They argue that neither was present here. The Court can agree with neither proposition.

In its opinion of October 15, 1990, the Court held that plaintiff's estoppel claim was viable in these circumstances pursuant to the Seventh Circuit's opinion in *Black*. *Lockrey*, 748 F.Supp. at 665. Defendants now contend that plaintiff still is unable to proceed with his estoppel claim because *Black* requires "a misleading representation" upon which plaintiff reasonably relied. (Defendants' Motion ¶ 4.) According to defendants, Donofrio made no "misleading representation" here because his statements "truthfully reflected the terms and workings of the Plan in effect when they were made." (*Id.* at ¶ 5.) The Court briefly addressed this argument in its October 15, 1990 opinion. Although it concluded that defendants had waived the argument by raising it for the first time in their reply brief, the Court did comment that the argument fails "to recognize that the alleged statements went beyond a mere description of the plan as it existed, and included representations to plaintiff as to how his benefits would, in the future, be computed if he took certain actions." *Lockrey*, 748 F.Supp. at 667. In fully addressing the issue at the summary judgment stage, the Court stands by its earlier conclusion. Not only did Donofrio describe to plaintiff that he could immediately seek a distribution of benefits valued as of September 30, 1987 when he reached the age of 59½, but Donofrio also expressly stated that plaintiff could wait until later in the fourth quarter of 1987 to make a withdrawal decision. If he made the latter choice, Donofrio represented that plaintiff's benefits still would be valued as of the September 30 valuation date. Regardless of whether Donofrio's statement was true at the time it was made, the statement proved erroneous. In reliance upon Donofrio's statement, plaintiff postponed his election until later in the fourth quarter of 1987. When he subsequently made an oral request to withdraw his benefits on November 2, and then followed that with a written request on No-

vember 10, defendants responded by informing plaintiff that a new date would govern the valuation of his benefits; they would not be valued as of the September 30 date referred to by Donofrio. In light of all the circumstances, then, Donofrio's statement was plainly misleading. Donofrio represented to plaintiff that his benefits would be valued in a certain way if he chose a particular course of action. Plaintiff chose that course only to find that defendants, as a result of an unanticipated decline in the stock market, had changed the rules of the valuation game. This case, therefore, presents a classic circumstance for application of estoppel principles.

Defendants, however, rely on the Seventh Circuit's statement in *Black* that estoppel may apply in an ERISA action when "one party has made a *misleading* representation to another party and the other has reasonably relied to his detriment on that representation." (Defendants' Motion ¶ 4) (quoting *Black*, 900 F.2d at 115 (Defendants' emphasis)). Defendants contend that the *Black* decision plainly is "predicated upon the necessity that there be a misrepresentation" and that there was no such misrepresentation by Donofrio in this case. (Def. Mem. at 5.) Defendants' proposed "false representation" standard cannot be so easily equated with the "misleading representation" requirement propounded by the Seventh Circuit in *Black*. A statement can be misleading even if not patently false, and the Court concludes that Donofrio's statement was plainly misleading in this case.

As authority for its definition of estoppel set forth in *Black*, the Seventh Circuit cited to the Supreme Court's decision in *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984), and to the decision of the Third Circuit in *Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, 597 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). *See Black*, 900 F.2d at 115. In *Rosen*, the Third Circuit stated that "[t]he principle of estoppel is the 'representation of fact made to a party who relies thereon with the right to so rely, [that] may not be denied by the party making the representation if such denial would result in injury or damage to the relying party.'" 637 F.2d at 597 (quoting 1 S. Williston, *Williston on Contracts* § 139, at 600 (3d ed. 1957)). In *Heckler*, moreover, the Supreme Court declared that "[e]stoppel is an equitable doctrine intended to avoid injustice in particular cases." 467 U.S. at 59, 104 S.Ct. at 2223. The party claiming the benefit of an estoppel "must have relied on its adversary's conduct 'in such a manner as to change his position for the worse' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Id.* (quoting 3 J. Pomeroy, *Equity Jurisprudence* § 804, at 192 (S. Symons ed. 1941)). Neither these definitions, nor that of the Seventh Circuit in *Black*, requires that there be a false representation.[1] In fact, such a requirement

---

1. The Supreme Court in *Heckler* also relied, however, on the definition of estoppel set forth in the Restatement (Second) of Torts § 894(1) (1979); defendant correctly points out that that definition speaks in terms of " 'a definite misrepresentation of fact' " upon which the other party reasonably relied. *See Heckler*, 467 U.S. at 59, 104 S.Ct. at 2223 (quoting Restatement (Second) of Torts § 894(1) (1979)); *see also Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986). Despite this language, the Court finds that, in practice, the concept of estoppel is applicable to any representation of fact which a party later seeks to deny. It is not a requirement that the representation be false at the moment it was made. *See Cleary v. Graphic Communications International Union Supplemental Retirement and Disability Fund*, 841 F.2d 444, 447 (1st Cir.1988) ("The principle of estoppel allows recovery upon a showing of (1) a representation of fact made to the plaintiff; (2) a rightful reliance thereon; and (3) injury or damage to plaintiff resulting from a denial of benefits by the party making the representation."); *Rosen*, 637 F.2d at 597; *Cochran v. AT & T Technologies, Inc.*, 753 F.Supp. 284, 289 (E.D.Mo.1991) (applying the concept of promissory estoppel to an ERISA action); *Ridens v. Voluntary Separation Program*, 610 F.Supp. 770, 777 (D.Minn.1985) ("Estoppel requires a representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment.").

would prevent utilization of an estoppel theory in the case of a material omission, as opposed to an affirmative representation. Instead, the proper focus of the inquiry is on whether a representation of fact was made which, in light of the context of the representation and the circumstances in which it was made, was misleading to the party to whom it was directed. Donofrio's statement clearly was misleading under this standard.

The Court finds support for this conclusion in the nature of the representations in the *Black* decision itself, for the representations in that case were similar to those at issue here. In *Black*, the plaintiff Paul E. Black was a salaried employee who participated in a severance plan. His employer filed a voluntary petition in bankruptcy, and eventually the company was sold to defendant TIC Investment Company. *Black*, 900 F.2d at 113. Shortly after this sale, plaintiff's employment was terminated. In his notice of termination, plaintiff was informed that the amount due to him as severance would be subject to the approval processes of his employer's bankruptcy proceeding. *Id.* Black also was told, however, that he could either "file a claim in the bankruptcy court for severance benefits, or the company would give him two months' salary continuation without the need to file a claim." *Id.* The plaintiff elected to file a claim in the bankruptcy court rather than to accept the company's offer of immediate cash. *Id.* However, subsequent to Black's election, the employer effectively changed the rules of the game when it objected in the bankruptcy court to all claims for severance pay advanced by employees terminated after a certain date, including the claim made by Black. *Id.* The Seventh Circuit held that estoppel was available to the plaintiff in these circumstances because no fair reading of the termination notice would suggest to the plaintiff that his employer intended to contest a severance claim in the bankruptcy court. *Id.* at 116. Moreover, the Court of Appeals found that Black had relied to his detriment on the employer's statements when he refused the offer of an immediate cash payment. *Id. Black* re-

futes defendants' argument herein because the employer's statement in the notice of termination was not false on its face. It merely notified Black of two possible options for obtaining his severance benefits. The notice was misleading, however, in that it failed to convey to Black the risk that his employer might choose to contest any claim made in the bankruptcy court.

Similarly, in the instant case, no fair interpretation of Donofrio's statement would lead a reasonable person to believe that Lockrey's benefits would or could be valued as of any date other than September 30, 1987. In response to specific questions regarding the operation of the Plan, Donofrio advised plaintiff that regardless of whether he immediately withdrew his benefits or waited until later in the fourth quarter of 1987 to make a withdrawal election, the applicable valuation date would be September 30, 1987. The record does not suggest that Donofrio qualified his statement in any way. He made no suggestion to plaintiff that defendants could designate additional valuation dates and retroactively apply such dates to the valuation of plaintiff's benefits. However, when plaintiff then sought to withdraw his benefits in November 1987, defendants took a position directly in conflict with Donofrio's representation. In accordance with the Seventh Circuit's decision in *Black*, Donofrio's initial representation clearly was misleading. It makes no difference that the statement was not absolutely false when made.

▆ The Court finds further support for its decision in *Kane v. Aetna Life Insurance*, 893 F.2d 1283 (11th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). There, plaintiff Kane and his wife were contemplating the adoption of a child who was hospitalized with serious medical complications. Defendant's customer service representative informed Mrs. Kane that the medical insurance plan at issue would cover the child's medical expenses from the date formal adoption proceedings were commenced. 893 F.2d at 1284. Moreover, another of defendant's agents stated to a hospital insurance verifier that the child's medical

expenses would be covered as of a specified date. *Id.* at 1284–85. When plaintiff filed a claim for coverage of these expenses, however, the defendant denied coverage, referencing a provision of the plan which excluded coverage for periods of hospitalization commencing prior to the effective date of coverage. *Id.* at 1285. The district court granted defendant's motion for summary judgment, finding that the representations of defendant's agents constituted oral modifications of the plan and that, therefore, equitable estoppel was unavailable to plaintiff pursuant to the Eleventh Circuit's decision in *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986).[2] *Id.* On appeal, however, the Eleventh Circuit distinguished its decision in *Nachwalter* and found that "equitable estoppel may be applied in this case because the representations made by [defendant's agents] to Mrs. Kane and the hospital were *interpretations* of the Plan, and not modifications." *Id.* (emphasis in original); *see also National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.*, 929 F.2d 1558, 1571–72 (11th Cir.1991). Thus, although these "interpretations" could not be described as "false representations" at the time they were made, the Eleventh Circuit found that the representations may

estop defendant from later taking a contrary position.[3] This Court agrees with the Eleventh Circuit's conclusion that such "interpretations" of an ERISA plan made by an individual having authority to so interpret the plan may give rise to an estoppel when the plan later takes a position contrary to that "interpretation."

The "interpretations" of the plan at issue in *Kane* were no different from Donofrio's "interpretation" of the valuation date provision of the Plan in this case. In both this case and *Kane*, statements were made by the defendant's agent regarding specific aspects of the plans at issue; the defendants in both cases later took positions that were directly in conflict with those representations. Even if the statements were not false representations made with the intent to mislead the plaintiffs, they in fact were " 'representation[s] of fact made to a party who relies thereon with the right to so rely.' " *Rosen*, 637 F.2d at 597 (quoting 1 S. Williston, *Williston on Contracts* § 139, at 600 (3d ed. 1957)).[4] Because Donofrio's representation gave no indication that a valuation date other than September 30, 1987 may be used to value plaintiff's benefits, the statements were plainly "mis-

---

**2.** In *Nachwalter,* the Eleventh Circuit had held that because ERISA plans themselves must be in writing, the terms of such plans are not subject to oral modification, and "the common law doctrine of estoppel cannot be used to alter this result." 805 F.2d at 960; *see also National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.,* 929 F.2d 1558, 1571 (11th Cir.1991); *Straub v. Western Union Tel. Co.,* 851 F.2d 1262, 1264–66 (10th Cir.1988).

**3.** The Eleventh Circuit in *Kane* based its analysis on the fact that the specific provisions of the plan at issue were ambiguous. Given such ambiguity, the court considered the statements of defendant's agents to be oral interpretations, rather than amendments or modifications. *Id.* at 1286. In *Alday v. Container Corporation of America,* 906 F.2d 660, 666 (11th Cir.1990), *cert. denied;* — U.S. —, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991), the Eleventh Circuit emphasized that its decision in *Kane* "only comes into play when the terms of a plan are ambiguous" and only "where the communications constituted an interpretation of that ambiguity." *See also National Companies,* 929 F.2d at 1572. By relying on *Kane* herein, the Court does not adopt the method of analysis utilized by the Eleventh Circuit in that case. As the Court noted in its

October 15, 1990 opinion, the Eleventh Circuit, in applying estoppel principles to an ERISA plan, has focused on ERISA's writing requirement, while our own Court of Appeals has viewed the question as one of public policy. *See Lockrey,* 748 F.Supp. at 664. Despite this difference in methodology, the case does lend support to the Court's conclusion that a false representation is not required before an estoppel may be worked.

**4.** In recently examining the scope of an ERISA fiduciary's responsibilities to disclose material information to its beneficiaries, Chief Judge Wald of the District of Columbia Circuit made the following cogent observation: "refraining from imparting misinformation is only *part* of the fiduciary's duty. Once [the plaintiff] presented his predicament, [the fiduciary] was required to do more than simply *not misinform,* [it] also had an affirmative obligation to *inform*—to provide complete and correct material information on [plaintiff's] status and options." *Eddy v. Colonial Life Ins. Co. of America,* 919 F.2d 747, 751 (D.C.Cir.1990) (emphasis in original). Defendants clearly failed this test here.

leading" as that term is used by the Seventh Circuit in *Black.* Because the only basis advanced by defendants in support of their motion for partial summary judgment is the absence of a misleading representation (*see* Defendants' Reply Mem. at 1 n. 1), their motion must be denied.

### B. Plaintiff's Motion for Partial Summary Judgment.

In response to defendants' motion, plaintiff filed his own cross-motion for partial summary judgment on the estoppel claim. The standards for summary judgment enunciated above also govern plaintiff's cross-motion. The Court already has concluded that Donofrio, on behalf of the Plan, made an unqualified representation to plaintiff regarding the appropriate valuation date of his Plan benefits. That representation was misleading because it failed to disclose that the Plan Committee believed it could retroactively change the valuation date applicable to plaintiff's benefits. Given this conclusion, plaintiff would be entitled to summary judgment on his estoppel claim if he also can establish that he reasonably relied to his detriment on Donofrio's representation. *See Black,* 900 F.2d at 115. Plaintiff has established these elements of his claim.

■ First, plaintiff has shown that in reliance on Donofrio's statements at the meeting in September 1987, he postponed his withdrawal election until later in the fourth quarter of 1987. (Pl. 12(m) ¶ 23.) At his deposition, plaintiff testified that he had intended to withdraw his benefits at age 59½. When asked whether he maintained that intention even after turning 59½, plaintiff stated that he would have withdrawn the benefits already had it not been for the conversation with Donofrio where "he advised me not to take it out." (Appendix to Pl. 12(m), Ex. K, Lockrey Dep.Tr. at 80–81.) This testimony satisfied plaintiff's initial burden with respect to the element of reliance. Lockrey's reliance on Donofrio's statement plainly was reasonable because Donofrio was a Vice–President of Finance who customarily fielded questions from participants in the Plan and who had been held up to Plan participants as someone to whom they could direct their questions. (*See* Pl. 12(m) ¶¶ 10–11, 15; Def. 12(n) ¶ 15.) *See National Companies,* 929 F.2d at 1574; *Eddy v. Colonial Life Ins. Co. of America,* 919 F.2d 747, 751 (D.C.Cir.1990). Thus, plaintiff was entitled to rely on Donofrio's representations. Once plaintiff satisfied his initial burden on the reliance issue, defendants then have the affirmative burden to come forward with evidence that would create an issue of fact for the factfinder. *See Burnham,* 910 F.2d at 1477; *Baucher,* 906 F.2d at 334. Defendants have failed to carry this burden.

■ Although defendants deny that Lockrey delayed the withdrawal of his Plan benefits in reasonable reliance on Donofrio's statement (Def. 12(n) ¶ 23.), they come forward with no evidence to support such a denial. Instead, to refute Lockrey's deposition testimony, defendants cite only to paragraphs 18 and 19 of plaintiff's original complaint. (Def. 12(n) ¶ 23.) The basis for this reference is the allegation therein that plaintiff relied on Donofrio's statements "and on the terms of the Plan" in electing to postpone his withdrawal request. (Complaint ¶¶ 18–19.) According to defendants, this reliance on the "terms of the Plan" destroys plaintiff's claim because § 2.51 of the Plan itself notifies plaintiff that additional valuation dates may be added as deemed appropriate by the Plan Committee. (*See* Pl. 12(m) ¶ 8(c); *see also* Def. Reply Mem. at 2.)[5] Defendants thus contend that plaintiff has no claim for estoppel "where he has relied upon the very instrument containing the basic information which Defendants purportedly failed to tell him." (Def.Reply Mem. at 3.) Perhaps overstating even their own argument, defendants go so far as to contend that "at the time of the conversation in question, Lockrey had the same information as Dono-

---

5. Section 2.51 provides as follows:
   *"Valuation Date"* means March 31, June 30, September 30 and December 31 of each year and such additional dates as the Committee shall deem appropriate.
   (Plan § 2.51; Appendix to Def. 12(m), Ex. A.)

frio. There is nothing more that Donofrio could have disclosed in September, 1987 that was not in the very document that Lockrey alleges he relied upon." (*Id.* at 6.) Defendants take more from the language of § 2.51 than its plain terms contain.

First, the Court cannot agree with defendants' premise that all necessary information was included in the Plan because § 2.51 fails to notify plaintiff that additional valuation dates could be added *and applied retroactively.* Pursuant to § 2.51, the Plan Committee retains the authority to add additional valuation dates as it deems appropriate. That section, however, is silent as to the possibility of retroactive application of such additional valuation dates. Prior to November 12, 1987, the Plan Committee had never exercised its authority to designate additional dates. (Def. 12(m) ¶ 9.) Thus, there was no precedent for their retroactive application. Considering § 2.51 in conjunction with Donofrio's statement at the September 1987 meeting, plaintiff plainly would assume that the September 30 valuation date would apply even if the Plan Committee were to exercise its authority to designate additional valuation dates. Donofrio stated that September 30 would be the applicable date, and § 2.51 fails to provide a reasonable reader with any information that is inconsistent with that representation. If it is defendants' contention that the valuation dates in § 2.51 could be altered retroactively, then that information should have been conveyed to Lockrey and the other Plan participants at the September 1987 meeting. In fact, that information probably should have been disclosed in § 2.51 itself. Absent any oral or written disclosure of that information, Donofrio's statement was misleading, and plaintiff was entitled to rely on it in postponing the withdrawal of his benefits.

Because the Court concludes that § 2.51 did not contain the relevant information relating to retroactive application of additional valuation dates, the securities cases relied on by defendants are not controlling. The cases cited by defendants stand for the basic proposition that under the securities laws, a written disclosure will control over any inconsistent oral representation. *See Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1545 (7th Cir.1990);[6] *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1322 (7th Cir.1988); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir.1985); *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1518 (10th Cir.1983). In relying on this principle, defendants contend that § 2.51, which permits the addition of new valuation dates, should control over Donofrio's statement, which failed to mention the possibility of any such dates. In *Acme Propane*, however, the Seventh Circuit limited the reach of the written disclosure rule enunciated in *Angelos* and *Zobrist* to those cases in which the language in the written instrument is "true, clear, and complete." 844 F.2d at 1325. Assuming that defendants' interpretation of § 2.51 is correct, and that any additional valuation dates established by the Plan Committee could be applied retroactively, then the language of § 2.51 is anything but "true, clear, and complete." Accordingly, this is not a case where plaintiff, in acting pursuant to Donofrio's representation, closed his eyes to a plain provision in the written Plan. The Court therefore concludes that § 2.51, and any reliance by

---

**6.** Defendants' reliance on the Seventh Circuit's decision in *Astor Chauffeured Limousine* is questionable at best. Although the Court of Appeals noted in that case that "parties to securities transactions should be able to rely on the written word as the sole proof of the inducements behind the deal," it ultimately concluded that "[o]urs is not a case, however, in which the written documents disclosed the truth, and the plaintiff insists that oral statements contradicted the writings." 910 F.2d at 1545. As in the present case, the written instrument in *Astor Chauffeured Limousine* was silent on the salient point at issue, and the Seventh Circuit held that "[a] silent contract does not prevent action based on an antecedent lie." *Id.* The Court, of course, would not characterize Donofrio's statement as an "antecedent lie." The representation instead was an interpretation of the Plan that arguably was consistent with its terms. Defendants now contend, however, that Donofrio's statement may not have disclosed the whole truth about the operation of the Plan. If such is the case, the Plan does not disclose the whole truth either.

plaintiff thereon, does not raise an issue of fact with respect to the reasonableness of plaintiff's reliance.[7]

Finally, there can be little dispute that plaintiff's reasonable reliance on Donofrio's statement was "to his detriment." *See Black*, 900 F.2d at 115–16. Defendants do not contend otherwise. (*See* Def.Reply Mem. at 1 n. 1.) Valued as of September 30, 1987, plaintiff's Plan benefits were worth $131,288.00; valued pursuant to the new October 31, 1987 valuation date designated by the Plan Committee on November 11, 1987, those same benefits were worth only $97,511.67. (Pl. 12(m) ¶¶ 21, 29.) Thus, the value of plaintiff's benefits was reduced $33,776.33 between the two relevant valuation dates. Because plaintiff reasonably relied on Donofrio's statements in postponing his withdrawal election, and because that reliance resulted in a reduction in the value of plaintiff's benefits, Lockrey's reliance was "to his detriment." *Black*, 900 F.2d at 115. Thus, there is also no factual issue with respect to this element of plaintiff's estoppel claim.

Having concluded that there are no genuine issues of fact regarding any element of plaintiff's estoppel claim, the Court finds that plaintiff is entitled to judgment as a matter of law on the issue of defendants' liability under Count I of plaintiff's original complaint. To date, the parties have not addressed the appropriate measure of plaintiff's damages on the estoppel claim. Instead, plaintiff's motion for partial summary judgment only addressed the issue of liability. (*See* Pl.Mem. at 6.) Therefore, the Court makes no determination with respect to damages at this time.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for partial summary judg-

ment on plaintiff's claim for estoppel is denied. Plaintiff's cross-motion for partial summary judgment is granted on the issue of liability under Count I of plaintiff's original complaint. The parties are directed to appear at a status hearing on July 30, 1991 at 9:30 a.m. to report to the Court on how they propose to proceed on Count II of plaintiff's complaint and on plaintiff's claim for damages pursuant to Count I.

---

7. Moreover, the Seventh Circuit has applied the written disclosure rule in securities cases to the concept of "materiality," rather than to that of justifiable reliance. In *Flamm v. Eberstadt*, 814 F.2d 1169, 1173 (7th Cir.1987), *cert. denied*, 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987), the Court of Appeals stated that, pursuant to its decision in *Angelos, supra*, "action in the teeth of a known risk should be evaluated as part of the inquiry into materiality, not reliance." *See*

*also Acme Propane*, 844 F.2d at 1322 n. *. The Seventh Circuit's decision in *Black* seemingly does not require the Court to make any finding relating to the materiality of Donofrio's statement or omission. *See Black*, 900 F.2d at 115–16. Moreover, defendants have not argued that the statement here was not material to Lockrey's withdrawal decision. The Court expressly finds that it was.