909 F.2d 1379
 135 L.R.R.M. (BNA) 3251, 116 Lab.Cas. P 10,305,
12 Employee Benefits Ca 1545
 TRUSTEES OF the COLORADO PIPE INDUSTRY PENSION TRUST, an
express trust, Plaintiff-Appellant,
and
Trustees of Colorado Pipe Industry Insurance Trust, an
express trust; Plumbers Local Union No. 3, United
Association of Journeymen and Apprentices of the Plumbing
and Pipefitting Industry of the United States and Canada;
and Pipefitters Local No. 208, United Association of
Journeymen and Apprentices of the Plumbing and Pipefittings
Industry of the United States and Canada, Plaintiffs,
v.
HOWARD ELECTRICAL & MECHANICAL INC., a Colorado Corporation;
and Howard Systems, Inc., a Colorado Corporation,
Defendants-Appellees,
and
Jacore, Inc., a Colorado Corporation, Defendant.
 No. 88-2938.
 United States Court of Appeals,
Tenth Circuit.
 May 18, 1990.
Rehearing Denied Aug. 27, 1990.
 
 James C. Fattor of Hornbein, MacDonald, Fattor & Hobbs, Denver, Colo., for plaintiff-appellant.
 Earl K. Madsen of Bradley, Campbell & Carney, Golden, Colo., for defendants-appellees.
 Before SEYMOUR and BALDOCK, Circuit Judges, and SEAY, District Judge.*
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiff-appellant trustees sought to collect withdrawal liability from defendant-appellee employer for the unions' multiemployer pension fund. The district court dismissed the action for lack of jurisdiction. We hold that the district court had jurisdiction to adjudicate the plaintiff's claim for withdrawal liability, and that the defendants waived their defenses to withdrawal liability by failing to arbitrate. Our jurisdiction over this appeal arises under 28 U.S.C. Sec. 1291. We reverse with instructions to enter summary judgment for the plaintiff.
 
 I.
 
 2
 The Colorado Pipe Industry Pension Fund (the fund) is an express trust established to provide retirement benefits for employees in the plumbing and pipefitting industry in the State of Colorado. The fund operates a multiemployer pension plan[1] as defined under the Employment Retirement Income Security Act, 29 U.S.C. Secs. 1001-1461 (ERISA). Defendant-appellee Howard Systems, Inc. is the parent of wholly-owned subsidiary and defendant-appellee Howard Electrical & Mechanical, Inc. (Howard), a Colorado corporation engaged in the construction business. This action between Howard and the trustees arises out of a labor dispute between Howard and Plumbers Local Union No. 3 and Pipefitters Local Union No. 208 (the unions). In our disposition of the instant case, we consider both the dispute between Howard and the unions and the dispute between Howard and the trustees.
 
 Unions' Unfair Labor Practices Action
 
 3
 In May 1981, Howard executed collective bargaining agreements with the unions. Under this agreement, Howard was obligated to contribute to the fund at a specified rate for each hour worked by the unions' members. When the collective bargaining agreement expired in May 1983, Howard and the unions were unable to agree upon a new contract. Paramount among the parties' disagreements was Howard's insistence on hiring "pre-apprentice," non-union employees to perform unit work. In December 1983, Howard presented its "final" offer to the unions, asserted that an impasse existed, and informed the unions that it intended to implement its final offer at the beginning of the new year. Howard hired its first pre-apprentice pipefitter in April 1984 and its first pre-apprentice plumber the following May.
 
 
 4
 Based upon Howard's unilateral action, the unions brought an unfair labor practice action before the National Labor Relations Board (NLRB). An ALJ concluded that, at the time Howard instituted the unilateral act of hiring pre-apprentice employees, the parties had bargained to a valid impasse;[2] thus under applicable labor law, Howard was entitled to institute unilateral changes in the work place. Howard Elec. & Mechanical, Nos. 27-CA-8889, 8889-2, 8924, unpub. order at 37 (NLRB Apr. 8, 1987). However, the NLRB reversed, declining to consider whether Howard and the unions had reached impasse. See Howard Elec. & Mechanical, 293 NLRB No. 51, slip op. at 9-11, NLRB Dec. (CCH) p 15,455 (March 29, 1989). Rather, the NLRB found that Howard's hiring of the pre-apprentice employees constituted an unfair labor practice because the unions had not agreed to exclude the pre-apprentice employees from the bargaining unit and NLRB proceedings were never instituted to change the scope of the unit. Id. The unions "were not required to bargain about" the scope of the bargaining unit, id. at 12; thus, Howard's implementation of its pre-apprentice proposal constituted an unfair labor practice, id. at 12-13. The NLRB ordered Howard to: 1) restore the status quo existing at the time the collective bargaining agreement expired and 2) resume bargaining with the unions until a new contract was agreed upon or a valid impasse reached.[3] Id. at 13.
 
 Trustees' Withdrawal Liability Action
 
 5
 In May 1986, during the pendency of the unions' unfair labor practices action, the trustees informed Howard that it was subject to withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. Secs. 1381-1461 (MPPAA). The trustees calculated Howard's withdrawal liability at $555,852 and demanded payment. Howard did not arbitrate the disputed liability, a prerequisite to maintaining a defense to withdrawal liability under Sec. 1401 of the MPPAA. The trustees then brought the present action against Howard seeking: 1) postcontract contributions under Sec. 1132(g)(2) of ERISA for contributions accrued after expiration of the collective bargaining agreement and 2) withdrawal liability of $255,032 under Sec. 1381 of the MPPAA.
 
 
 6
 The trustees moved for summary judgment on the withdrawal liability claim, contending that Howard had waived all defenses to its withdrawal liability by failing to arbitrate, 29 U.S.C. Sec. 1401(b). Howard also moved for summary judgment arguing that, according to the Supreme Court's recent holding in Laborers Health & Welfare Fund for N. Cal. v. Advanced Lightweight Concrete Co., 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), the district court lacked jurisdiction over the trustees' action. The trustees conceded that Advanced Lightweight Concrete was dispositive of their Sec. 1132(g)(2) claim for postcontract contributions, but contended that the case did not bar federal jurisdiction over the withdrawal liability claim brought under Sec. 1381. The district court, however, dismissed the entire action for lack of jurisdiction holding that "the unfair labor practice charges brought by the unions and still pending before the NLRB are matters for which the NLRB has exclusive jurisdiction and precludes this court from proceeding in this matter." Trustees of Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mechanical, Inc., No. 86-M-2561, unpub. order at 4 (D.Colo. Nov. 28, 1988).
 
 II.
 
 7
 This case requires us to construe the respective jurisdictional bases of two statutory remedies available to multiemployer pension plans: ERISA and the MPPAA. This circuit has not considered whether a federal court which lacks jurisdiction over an action brought under Sec. 1132(g)(2) of ERISA can nevertheless maintain jurisdiction over an Sec. 1381 action brought under the MPPAA. This jurisdictional issue presents a question of law subject to de novo review. Williams Natural Gas Co. v. Oklahoma City, 890 F.2d 255, 260 n. 7 (10th Cir.1989).
 
 A.
 
 8
 Congress enacted ERISA, "to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 720, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984). Toward that end, ERISA creates a statutory obligation requiring that employers contribute to multiemployer plans in accordance with their contractual obligations.[4] 29 U.S.C. Sec. 1145. ERISA also provides trustees of multiemployer plans with a remedy to collect delinquent contributions, plus interest and attorney's fees, from errant employers.[5] 29 U.S.C. Sec. 1132(g)(2).
 
 
 9
 In 1980, Congress amended ERISA to establish special rules governing multiemployer pension plans. These amendments were necessary because, under ERISA, employers could withdraw from a multiemployer pension plans without paying their share of the unfunded vested benefit liability, thereby threatening the solvency of such plans. Advanced Lightweight Concrete, 484 U.S. at 545, 108 S.Ct. at 834; Joyce v. Clyde Sandoz Masonry, 871 F.2d 1119, 1120 (D.C.Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989); Woodward Sand Co. v. Western Conference of Teamsters Pension Trust Fund, 789 F.2d 691, 694 (9th Cir.1986).
 
 
 10
 As enacted, the [MPPAA] requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan. This withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefits' calculated as the difference between the present value of vested benefits and the current value of the plan's assets. 29 U.S.C. Sec. 1381, 1391.
 
 
 11
 Gray, 467 U.S. at 725, 104 S.Ct. at 2715. The MPPAA empowers trustees of multiemployer plans to maintain actions for withdrawal liability and vests federal courts with jurisdiction over such disputes.[6] 29 U.S.C. Sec. 1451(a) & (c).
 
 
 12
 Under the MPPAA, an employer becomes subject to withdrawal liability once it "permanently ceases to have an obligation to contribute" to a multiemployer pension fund.[7] 29 U.S.C. Sec. 1383(a)(1). "[T]he term 'obligation to contribute' means an obligation arising--(1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law...." 29 U.S.C. Sec. 1392(a). Under Sec. 1392(a)(1), the employer's obligation to contribute arises from contractual agreements requiring the employer to contribute to a multiemployer fund. Once such a contract expires, the employer no longer has an obligation to contribute under Sec. 1392(a)(1). See Woodward Sand, 789 F.2d at 695. An employer's obligation to contribute under Sec. 1392(a)(2) derives from the employer's statutory duty to maintain the status quo after the expiration of a collective bargaining agreement to "promote[ ] industrial peace by fostering a non-coercive atmosphere that is conducive to serious negotiations of a new contract." Advanced Lightweight Concrete, 484 U.S. at 544 n. 6, 108 S.Ct. at 833 n. 6 (quotations omitted).
 
 
 13
 Pursuant to the National Labor Relations Act, 29 U.S.C. Secs. 141-197 (NLRA), an employer's abrogation of terms and conditions of an expired collective bargaining agreement during negotiation of new agreement may constitute an unfair labor practice. See, e.g., NLRB v. Katz, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). Thus, where an employer has an obligation to contribute to a pension plan under a collective bargaining agreement, the NLRA may obligate the employer to continue contributing to the fund after the contract has expired. See Advanced Lightweight Concrete, 484 U.S. at 543-44 nn. 5 & 6, 108 S.Ct. at 833 nn. 5 & 6; Woodward Sand, 789 F.2d at 695. So long as an employer is required to contribute to a multiemployer pension plan by the NLRA, it maintains an obligation to contribute under Sec. 1392(a)(2) of the MPPAA. Consequently, absent a procedural default, the employer cannot be assessed for withdrawal liability. An employer ceases to have an obligation to contribute under Sec. 1392(a)(2) of the MPPAA once it bargains to impasse with its employees' unions. Once impasse is reached between the parties, an employer's NLRA-imposed duty to maintain the status quo during postcontract negotiations is extinguished, Advanced Lightweight Concrete, 484 U.S. at 543 n. 5, 108 S.Ct. at 833 n. 5 (citing American Ship Bldg. Co. v. NLRB, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1960)), and the employer may take reasonable unilateral action without violating the NLRA, Newspaper Printing Corp. v. NLRB, 625 F.2d 956, 966 (10th Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981); Rozay's Transfer v. Local Freight Drivers, Local 208, 850 F.2d 1321, 1332 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989).[8]
 
 B.
 
 14
 The district court held that Advanced Lightweight Concrete posed a jurisdictional bar both to adjudication of the trustees' action for postcontract contributions and their claim for withdrawal liability. In Advanced Lightweight Concrete, a pension fund sought postcontract contributions under Sec. 1132(g)(2) of ERISA, based upon an employer's failure to maintain the status quo. 484 U.S. at 542, 108 S.Ct. at 832. The Supreme Court noted that the employer's postcontract obligation to contribute was derived, not from ERISA, but from the NLRA. Id. at 545-46, 108 S.Ct. at 833-34. The Supreme Court therefore held that, under Sec. 1132(g)(2) of ERISA, original federal jurisdiction was limited to actions for contractual contributions; contributions owed solely as a result of a noncontractual statutory duty to maintain the status quo properly are sought initially in an action before the NLRB. Id. at 548-49, 108 S.Ct. at 835-36. See, e.g., Central States Pension Fund v. Behnke, Inc., 883 F.2d 454, 464 (6th Cir.1989) (where pension plan trustees' Sec. 1132(g)(2) action against employer for postcontract contributions arose from independent contractual promise in interim agreement, the district court properly exercised jurisdiction under Advanced Lightweight Concrete ).
 
 
 15
 In the instant case, the trustees sought noncontractual contributions under Sec. 1132(g)(2) of ERISA for the period after the expiration of the collective bargaining agreement between Howard and the unions. The only source of Howard's obligation to make these payments was the NLRA requirement that it maintain the status quo during the period of negotiation before impasse. Therefore, as conceded by the trustees, Advanced Lightweight Concrete poses a jurisdictional bar to adjudication of their Sec. 1132(g)(2) action in district court.
 
 
 16
 The district court also held that Advanced Lightweight Concrete precluded federal jurisdiction over the trustees' action for MPPAA withdrawal liability. We disagree. Advanced Lightweight Concrete involved the "narrow category of suits seeking recovery of unpaid [noncontractual] contributions accrued during the period between contract expiration and [bargaining] impasse." Laborers Health & Welfare Trust Fund v. Advance Lightweight Concrete Co., 779 F.2d 497, 505 (9th Cir.1985), aff'd, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). The employer's liability in Advanced Lightweight Concrete for postcontract contributions was predicated upon a generalized duty imposed by the NLRA to maintain the status quo. In contrast, Howard's withdrawal liability rests upon a separate cause of action specially created by Congress: 29 U.S.C. Sec. 1381. In Advanced Lightweight Concrete, by relying entirely upon ERISA to support federal jurisdiction, 484 U.S. at 543 n. 4, 108 S.Ct. at 832 n. 4, plaintiffs essentially were attempting to hitch a remedial ERISA wagon to a NLRA horse. Here, Congress has created a distinct federal remedy--withdrawal liability--and explicitly vested federal courts with jurisdiction to adjudicate such claims. 29 U.S.C. Sec. 1451(c). See Central States Southeast & Southwest Areas Pension Fund v. Houston Pipe Line Co., 713 F.Supp. 1527, 1533 n. 9 (N.D.Ill.1989) (claim for withdrawal liability "cannot remotely be deemed an unfair labor charge" bared under Advanced Lightweight Concrete ).
 
 
 17
 Although impasse usually is an issue determined by the NLRB in an unfair labor practices charge, district courts may "find it necessary to decide whether an impasse occurred in withdrawal liability cases in which there is a dispute over the date of withdrawal." Advanced Lightweight Concrete, 484 U.S. at 552 n. 19, 108 S.Ct. at 837 n. 19. See, e.g., Woodward Sand, 789 F.2d at 695 (remanding MPPAA action to district court for determination of whether an impasse had been reached); I.A.M. Nat. Pension Fund Benefit Plan C v. Schulze Tool & Die Co., 564 F.Supp. 1285, 1296-98 (N.D.Cal.1983) (granting summary judgment in MPPAA action on question of impasse). Although this determination technically presents a labor law question, impasse is an issue collateral to the independent federal remedy of withdrawal liability and therefore does not defeat federal jurisdiction. See Advanced Lightweight Concrete, 484 U.S. at 543 n. 4, 108 S.Ct. at 832 n. 4; Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975) ("federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies.").
 
 III.
 
 18
 Having held that the district court had jurisdiction to adjudicate the trustees' MPPAA action against Howard for withdrawal liability, we now must consider the effect of Howard's failure to arbitrate. Federal courts presented with the question of whether arbitration is required under the MPPAA uniformly have addressed the question as an issue of exhaustion of administrative remedies, not as an absolute jurisdictional bar. See Mason & Dixon Tank Lines v. Central States, Southeast & Southwest Areas Pension Fund, 852 F.2d 156, 163 (6th Cir.1988); Robbins v. Admiral Merchants Motor Freight, 846 F.2d 1054, 1056 (7th Cir.1988); Central States Southeast & Southwest Areas Pension Fund v. T.I.M.E.-DC, 826 F.2d 320, 325-28 (5th Cir.1987); I.A.M. Nat. Pension Fund v. Clinton Engines, 825 F.2d 415, 417 & n. 4 (D.C.Cir.1987).
 
 
 19
 "[A]rbitration reigns supreme under the MPPAA." Id. at 422. The MPPAA provides: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. Secs. 1381-1399] shall be resolved through arbitration." 29 U.S.C. Sec. 1401(a)(1) (emphasis supplied). An employer's withdrawal liability first is determined by the plan sponsor, 29 U.S.C. Secs. 1382, 1399(b)(1), whereupon the employer has ninety days to request a recalculation, 29 U.S.C. Sec. 1399(b)(2). Once the employer has responded to this request, or upon the elapse of 120 days, the employer has sixty days to request arbitration. 29 U.S.C. Sec. 1401(a)(1). Failure to initiate arbitration within this statutory period has a harsh result--the amount demanded by the pension plan sponsor becomes due and owing.
 
 
 20
 If no arbitration proceeding has been initiated ... the amounts demanded by the plan sponsor under [29 U.S.C. Sec. 1399(b)(1) ] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State of Federal court of competent jurisdiction for collection.
 
 
 21
 29 U.S.C. Sec. 1401(b)(1). By failing to arbitrate, an employer thus waives any defenses to collection actions that could properly have been heard before the arbitrator. See In re Centric Corp., 901 F.2d 1514, 1518 (10th Cir.1990); McNicholas, 848 F.2d at 23-24; Clinton, 825 F.2d at 429.
 
 
 22
 In enacting the MPPAA, Congress sought to channel disputes over withdrawal liability into the informal and expeditious procedure of arbitration. Teamsters Pension Trust Fund v. Allyn Transp. Co., 832 F.2d 502, 504 (9th Cir.1987). Thus, in addition to performing the technical function of calculating an employer's withdrawal liability, MPPAA arbitrators may determine whether an employer has completely withdrawn from a plan, id. at 506, resolve labor issues to the extent necessary to determine whether an employer has withdrawn, see New York Teamsters Conference Pension & Retirement Fund v. McNicholas Transp., 848 F.2d 20, 23 (2d Cir.1988), and engage in statutory interpretation of the MPPAA, Allyn, 832 F.2d at 506; Flying Tiger Lines v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1247 (3d Cir.1987). On the other hand, arbitration may be bypassed in cases involving constitutional questions, Marvin Hayes Lines v. Central States, Southeast & Southwest Areas Pension Fund, 814 F.2d 297, 300 (6th Cir.1987); Republic Indus. v. Teamsters Council No. 83 of Virginia Pension Fund, 718 F.2d 628, 635 (4th Cir.1983), questions of statutory interpretation outside the MPPAA, Flying Tiger, 830 F.2d at 1253-55, and allegations of fraud, Carl Colteryahn Dairy Inc. v. Western Pa. Teamsters & Employers Pension Fund, 847 F.2d 113, 118-19 (3d Cir.1988). Moreover, because "a failure to arbitrate does not waive a defense that the employer does not yet have," an employer who fails to arbitrate may still assert a laches defense in a subsequent collection action. Centric, 901 F.2d at 1518. Under the MPPAA, the arbitrator's factual findings are presumed correct, 29 U.S.C. Sec. 1401(b); however, district courts review the arbitrator's legal conclusions de novo. Trustees of Amalgamated Ins. Fund v. Geltman Indus. 784 F.2d 926, 929 (9th Cir.1986).
 
 
 23
 Howard does not dispute the Draconian result produced by an employer's failure to arbitrate. However, Howard contends that, because its withdrawal liability hinges upon labor law questions adjudicated before the NLRB, i.e., the existence of an impasse, the arbitrator lacked jurisdiction to determine whether Howard had a duty to contribute to the fund. In advancing this argument, Howard has confused jurisdiction with preclusion. Under settled principles of preclusion, relitigation of issues adjudicated before the NLRB in a subsequent MPPAA action is barred by collateral estoppel, to the extent that the issues are identical and their resolution was essential to the NLRB's determination. See United States v. Utah Constr. Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); 4 K. Davis, Administrative Law Treatise Sec. 21:3 at 51-52 (1983); Restatement (Second) Judgments Sec. 83. Thus, in determining whether Howard had a continuing duty to contribute to the fund under 29 U.S.C. Sec. 1392(a), both the arbitrator and the district court on review would be obligated to accord collateral estoppel effect to the NLRB's findings. Indeed, a MPPAA arbitrator may, in his discretion, elect to stay proceedings pending resolution of a prior NLRB action. Nevertheless, this preclusionary obligation does not divest arbitrators of jurisdiction over MPPAA claims involving labor law issues nor obviate the consequences of an employer's failure to arbitrate. Even if Howard would have prevailed in arbitration, by failing to take this statutorily required procedural step, Howard waived its defenses to withdrawal liability. See 29 U.S.C. Sec. 1401(b)(2). The trustees therefore are entitled to judgment as a matter of law. See McNicholas, 848 F.2d at 23-24; Robbins, 846 F.2d at 1057; Allyn, 832 F.2d at 506. We recognize the severity of this result and note the criticism to which Sec. 1401 of the MPPAA has been subjected. See, e.g., Woodrum & McBride, Controlled Group Liability Under the Multiemployer Pension Plan Amendments Act: Liability Without a Limit, 90 W.Va.L.Rev. 731, 735 (1988) ("a federal court collection action by a plan against an employer who has failed to navigate the shoals of arbitration is tantamount to obtaining a default judgment."); Comment, MPPAA Withdrawal Liability Assessment: Letting the Fox Guard the Henhouse, 14 Fordham Urb.L.J. 211, 236 (1986) (criticizing MPPAA arbitration procedure). Nevertheless, Congress deemed that this harsh remedy was appropriate when it enacted the MPPAA and we decline to second-guess its judgment here.
 
 
 24
 The district court shall enter judgment for the trustees.
 
 
 25
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation
 
 
 [1]
 ERISA defines a multiemployer plan as follows:
 The term 'multiemployer plan' means a plan--
 (i) to which more than one employer is required to contribute,
 (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and
 (iii) which satisfies such other requirements as the Secretary may prescribe for regulation.
 29 U.S.C. Sec. 1002(37)(A).
 
 
 [2]
 Parties to labor negotiations reach an impasse at "that point at which [they] have exhausted the prospects of concluding an agreement and further discussions would be fruitless...." R. Gorman, Basic Text on Labor Law 448 (1976). Whether an impasse exists is a matter of judgment involving, among other things, the parties' good faith, their bargaining history and the importance of the issue over which disagreement exists. Id
 
 
 [3]
 The NLRB's decision currently is on appeal. NLRB v. Howard, appeal docketed, No. 89-9532 (10th Cir. May 24, 1989)
 
 
 [4]
 The statute provides:
 Sec. 1145 Delinquent contributions
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 [5]
 According to the statute:
 In any action under this title by a fiduciary for or on behalf of a plan to enforce [Sec. 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan--
 (A) the unpaid contributions,
 (B) interest on the unpaid contributions,
 (C) an amount equal to the greater of--
 (i) interest on the unpaid contributions, or
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
 (E) such other legal or equitable relief as the court deems appropriate....
 29 U.S.C. Sec. 1132(g)(2).
 
 
 [6]
 The statute provides in pertinent part:
 Sec. 1451 Civil Actions
 (a) Persons entitled to maintain actions. (1) A plan fiduciary ... who is adversely affected by the act or omission of any party under this subtitle [29 U.S.C. Secs. 1381 et seq.] with respect to a multiemployer plan ... may bring an action for appropriate legal or equitable relief, or both.
 (c) Jurisdiction of Federal and State Courts. The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability.
 
 
 [7]
 An employer may, however, suspend contributions to a multiemployer plan during a labor dispute without incurring withdrawal liability under the MPPAA. 29 U.S.C. Sec. 1398(2). Moreover, if an employer rejoins a multiemployer plan after previously withdrawing, its liability is subject to abatement. 29 U.S.C. Secs. 1387, 1388
 
 
 [8]
 Even upon reaching impasse, an employer's obligation to contribute is not extinguished under the MPPAA where the employer is otherwise contractually bound. See e.g., Cuyamaca Meats v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund, 827 F.2d 491, 497-99 (9th Cir.1987) (where employer expressly contracted to continue contributing to pension fund through August, the fact that the parties reached impasse in May did not extinguish employer's obligation to contribute triggering employer withdrawal liability before August), cert. denied, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988)