RXDC, INC., formerly known as Rexall Corporation, Plaintiff,

v.

OIL, CHEMICAL AND ATOMIC WORK-ERS UNION–INDUSTRY PENSION FUND, a pension trust, and its present Trustee, Defendant.

Civ. A. No. 90–S–438.

United States District Court,
D. Colorado.

Jan. 29, 1992.

Richard Mandelson, Baker & Hostetler, Denver, Colo., Gary Ford, Washington, D.C., for plaintiff.

John McKendree, McKendree, Toll and Mares, Denver, Colo., Barbara Hillman, Cornfeld & Feldman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the Court on cross-motions for summary judgment. Plaintiff's motion for summary judgment was filed August 31, 1990. The Defendant filed its response in opposition to Plaintiff's motion and brief in support of its cross-motion for summary judgment on October 23, 1990. Reply briefs and supplemental documents were also submitted. Also pending before this court is Defendant's motion for interim payment. This motion will be decided in conjunction with the disposition of the summary judgment motions.

### I. The Complaint

This is an action to obtain judicial review of an arbitration award. Jurisdiction is proper under 29 U.S.C. § 1401(b)(2). The matter is before this Court as an action by the Plaintiff to set aside an arbitration award rendered in favor of the Defendant Fund, and assessing withdrawal liability against the Plaintiff in excess of $3.6 million. Jurisdiction is proper under § 4221 of the Employee Retirement Income Security Act (ERISA), and as amended by the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. § 1401(b)(2). The basis of this dispute arises from the statutory scheme which governs the liability of an employer who withdraws from a multi-employer pension plan pursuant to MPPAA, 29 U.S.C. § 1401(b)(2). The Seventh Circuit has described this statutory scheme as follows:

> MPPAA was enacted by Congress to cure the problems arising when one employer ceased making payments to a pension plan fund. When an employer ceased making such payments, the plan would be left with vested pension obligations which were only partially funded. MPPAA provides that an employer who withdraws from a pension plan covered under it becomes liable for an amount of money designed to cover the employer's share of vested, but unfunded, benefits. 29 U.S.C. § 1382 (citations omitted).

*Robbins v. Lady Baltimore Foods*, 868 F.2d 258, 261 (7th Cir.1989). The complaint alleges, at paragraph 9, that Rexall II did not assume the collective bargaining agreement between Rexall I and the Oil, Chemical and Atomic Workers (OCAW) local union, but did comply with the terms and conditions of the 1975 collective bargaining

agreement (including the obligation to contribute to the pension fund) through May 11, 1977, and also that the Fund had advised Rexall II of its withdrawal liability in the amount of $3,661,400. The complaint also states, at paragraph 16, that the information furnished Plaintiff by the Fund indicated that the Fund had calculated the amount of Rexall II's liability as if Rexall II and Rexall I had been the same corporate entity. Finally, the complaint seeks to set aside the factual findings of the arbitrator as erroneous and rebutted by a clear preponderance of the evidence, as well as the conclusions of law as erroneous and contrary to law. Plaintiff requests the Court to reverse, vacate, or modify the award, to invalidate any withdrawal liability assessment against Rexall II, and grant Plaintiff its attorney's fees.

As the facts are stipulated by the parties, this matter can be disposed of by summary judgment. Only questions of law remain to be determined by this Court.

## II. Factual Background

The events leading up to the arbitration on the withdrawal liability assessment can be summarized as follows. Rexall I operated a drug manufacturing plant in St. Louis, Missouri, until January 7, 1977. At that time Rexall I's manufacturing plant, the right to use the name "Rexall Drug," as well as other assets, were purchased by a newly formed corporation known as Rexall II. Rexall II assumed the terms and conditions of the collective bargaining agreement between Rexall I and the Oil, Chemical and Atomic Workers (OCAW) Local 5–136 which had been in force since 1970.

The agreement in effect on January 7, 1977 was assumed by Rexall II with no modifications or changes. Rexall II was a successor employer within the meaning of the Labor Management Relations Act, and the collective bargaining agreement in effect on January 7, 1977 and successor collective bargaining agreements provided that Rexall II make contributions to Defendant pension plan. On January 7, 1977, Rexall II notified the OCAW local of the change in ownership of Rexall Drug. However, the pension plan was not made aware of the asset purchase agreement prior to Rexall II's objections to the pension plan's demand for payment of the withdrawal liability.

The stipulated facts also state that the asset purchase agreement between Rexall I and Rexall II was a bona fide, arm's length sale of assets to an unrelated party, within the meaning of § 4204 of ERISA.

Rexall I and Rexall II made all contributions to the pension plan as required by the terms of the applicable collective bargaining agreement. Effective December 31, 1985, Rexall II closed its plant and warehouse facilities, and ceased owing any obligation under the collective bargaining agreement to make pension plan contributions. On that same date, there was a complete withdrawal by Rexall II for the purposes of MPPAA.

The parties here have submitted stipulated facts and agree that the salient issues in this action concern questions of law, including which standard of review is appropriate. However, the parties disagree substantially on the content and nature of those legal issues.

## III. Procedure Under the MPPAA

Congress enacted ERISA "to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984). In response to the special problems experienced by multiemployer pension plans, Congress enacted the MPPAA in 1980 to correct the problem created by the withdrawal of employers from pension plans without payment of their share of the unfunded vested liability benefits (UVB's). MPPAA "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan. This withdrawal liability is the employer's proportionate share of the plan's UVB's calculated as the difference between the present value of vested benefits and the current value of

the plan's assets." *Id.* at 725, 104 S.Ct. at 2715.

 The MPPAA provides that when an employer withdraws from a multiemployer plan, the plan's beneficiaries must (1) determine the amount of liability (if any); (2) notify the employer of the liability; and (3) collect the liability. 29 U.S.C. § 1382. Under MPPAA, an employer becomes subject to withdrawal liability once it "permanently ceases to have an obligation to contribute" to a multiemployer pension fund. *Trustees of the Colorado Pipe Industry Pension Trust v. Howard Electrical & Mechanical, Inc.,* [hereafter referred to as *Pipe Industry Fund* ] 909 F.2d 1379, 1383 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991), citing 29 U.S.C. § 1383(a)(1). Pursuant to 29 U.S.C. § 1383, a complete withdrawal from a multiemployer plan occurs when an employer either permanently ceases to have an obligation to contribute under the plan, or permanently ceases all covered operations under the plan. As the Tenth Circuit noted in the *Pipe Industry Fund* decision at 1385, arbitration reigns supreme under the MPPAA (citation omitted). Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination concerning withdrawal liability (under 29 U.S.C. §§ 1381–1399) shall initially be resolved through arbitration. The withdrawal liability determination is first made by the plan sponsor (29 U.S.C. §§ 1382, 1399(b)(1)), and upon that determination, the employer has ninety days to request a recalculation of the amount under 29 U.S.C. § 1399(b)(2). The employer may also seek arbitration of the assessment of withdrawal liability pursuant to 29 U.S.C. § 1401(a)(1), which the Plaintiff here obtained.

A remaining issue which is the subject of a separate motion is the Defendant's motion for interim payment. The particular provision applicable to this issue is found at 29 U.S.C. § 1399(c)(2). The Court will reserve its ruling on this motion until the motions for summary judgment are resolved.

 The MPPAA provides a detailed discussion of both the subject and procedure of arbitration concerning a disputed assessment of withdrawal liability. At the arbitration level, 29 U.S.C. § 1401(a)(3) establishes two presumptions in favor of the plan sponsor (Defendant Fund here): that any determination made by the sponsor (pursuant to 29 U.S.C. §§ 1381–1399 and § 1405) is presumed correct unless the party contesting the determination show by a preponderance of the evidence that the determination was unreasonable or clearly erroneous; and that the determination of a plan's unfunded vested benefits (UVB's) for any plan year will be presumed correct unless a party contesting the determination shows by a preponderance of the evidence that the actuarial assumptions were unreasonable or that the actuary made a substantive error in applying the actuarial assumptions. See *Withdrawal Liability Under the MPPAA,* in *ERISA: A Comprehensive Guide* 331–32 (1991). In the case before this Court, post-arbitration litigation was commenced timely, and the arbitration record is before this Court for consideration.

### IV. Standard of Review

 The review by this Court of the arbitrator's decision is made pursuant to 29 U.S.C. § 1401(b)(2), which allows for judicial review to "enforce, vacate, or modify the arbitrator's award." The arbitrator's factual findings are presumed correct, 29 U.S.C. § 1401(b), while the review of legal conclusions is *de novo. Pipe Industry Fund,* 909 F.2d at 1386, citing *Trustees of Amalgamated Ins. Fund v. Geltman Industries,* 784 F.2d 926, 929 (9th Cir.) *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

The *Pipe Industry Fund* court noted that, in enacting MPPAA, Congress sought to channel disputes over withdrawal liability into the informal and expeditious procedure of arbitration. 909 F.2d at 1385–86, citing *Teamsters Pension Fund v. Allyn Transp. Co.,* 832 F.2d 502, 504 (9th Cir. 1987). Arbitrators may calculate an employer's withdrawal liability, determine

whether an employer has completely withdrawn from a plan, and engage in statutory interpretation of the MPPAA. *Pipe Industry Fund,* 909 F.2d at 1386 (citations omitted). The Court will examine the arbitration award in light of the above considerations.

### V. The Arbitration Award

Arbitration of MPPAA claims are different from arbitration of other matters in important ways. With regard to a challenge to the calculation of withdrawal liability, the arbitration process has been criticized as an uneven playing field in that the presumptions inherent in the process favor the pension plan. See Note, *MPPAA Withdrawal Liability Assessment: Letting the Fox Guard the Henhouse,* 14 Fordham Urb.L.J. 211, 236–50 (1985–86).

On the 25th and 26th of April, 1989, the parties conducted arbitration on the withdrawal liability issue. On February 15, 1990, the arbitrator issued his fifty page opinion and award, determining that Rexall is obligated to pay withdrawal liability to the Fund in the amount of $3,661,400. The arbitrator framed the issue as "whether Rexall II owed any withdrawal liability and, if so, in what amount." Award at 7. The award examines in considerable detail the contention of both parties, and in a fourteen-page discussion of the contentions, the arbitrator provides his analysis of the claims of the parties.

### VI. Issues Presented

In its motion, Plaintiff moves for summary judgment on the grounds that the award, arbitration record, and applicable law demonstrate that the award and liability assessment itself are contrary to law and must be invalidated. Plaintiff attacks the method of calculating withdrawal liability used by Defendant Fund, the direct attribution method, as it allowed the withdrawal liability to be determined by treating Rexall I and Rexall II as a single employer. At the arbitration RXDC presented expert evidence regarding the different methods of calculating withdrawal liability, Plaintiff's expert Mr. Kowalczyk asserted that Rexall II had actually paid out more than its share of the Fund's vested benefit liabilities. (Record at 4–73.)

In particular, RXDC attacks the arbitrator's application of equitable estoppel to the dispute, and asserts that Rexall II has no withdrawal liability because there were no UVB's, and that the Fund used an improper allocation method to determine the withdrawal liability. Plaintiff's attack on the equitable estoppel ground involves consequently the arguments that MPPAA does not authorize an arbitrator to reallocate liabilities on equitable grounds and that the Fund's treatment of Rexall I and Rexall II as a single entity violates ERISA.

The Defendant Fund argues in its cross-motion and response to RXDC's motion that the only legal issue which is properly before this Court concerns the arbitrator's application of estoppel and waiver. Defendant would limit the scope of inquiry further by characterizing estoppel as a mixed question of law and fact, and a question which would be "particularly suited for resolution by the decision-maker with initial fact finding responsibilities." Defendant's brief in support of its cross-motion for summary judgment and in response to Plaintiff's motion for summary judgment, citing *Chicago Truck Drivers Pension Fund v. Zahn Drug Co.,* 890 F.2d 1405, 1409 (7th Cir.1989). The standard of review urged by Defendant would be a narrow one indeed. Defendant characterizes as findings of fact the elements of the arbitrator's estoppel finding which treated Rexall I and Rexall II as a single entity (as based on Rexall II's conduct). The treatment of Rexall I and Rexall II as a single entity for withdrawal liability purposes is appropriate, Defendant argues, because (reiterating the arbitrator's statement in the Award at 43) the anti-successorship doctrine is based primarily on considerations of fairness, therefore those seeking its application must act fairly themselves.

The issues presented in this action are several and interrelated. As noted above, the identification of the issues to be determined are the subject of substantial dispute. In considering these issues, however, the Court will examine three issues in

particular: (1) whether the arbitrator appropriately applied equitable estoppel in his award; (2) whether the arbitrator, as a matter of law, misapplied the "anti-successorship doctrine" in concluding that Rexall I and Rexall II were a single entity for withdrawal liability purposes; and (3) whether the fact that the Fund was fully funded (no UVB's) as of the year-end preceding the withdrawal must result in finding that Rexall II has no withdrawal liability.

## VII. Analysis

### 1. Whether the Arbitrator Appropriately Applied Equitable Estoppel in His Award

Estoppel is an equitable doctrine which requires judicial consideration of relative equities of the parties. See *Che–Li Shen v. INS*, 749 F.2d 1469 (10th Cir.1984), (quoting *Lurch v. United States*, 719 F.2d 333, 341 (10th Cir.), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984)). The question regarding the application of equity in this case is no doubt a double-edged sword. Plaintiff seeks to limit its application by urging that, as a matter of law it was incorrectly applied as the MPPAA arbitrator had no authority to rule in such a manner. However, the court must also acknowledge that RXDC's argument urging application of the anti-successorship doctrine also concerns a doctrine akin to equity. The anti-successorship doctrine has been characterized as concerning fairness. *Richland Industries, Ltd. v. Robbins*, 617 F.Supp. 639, 645 (D.C.Ill.1985). The *Richland* case is cited by RXDC in support of its argument that "the rule of section 4204 is the sole and exclusive method for transferring the contribution history form [sic] an asset seller to an asset purchaser." See Plaintiff's brief in support of its motion for summary judgment at 34. RXDC then proceeds to argue that, because the sale of assets from Rexall I to Rexall II took place before MPPAA was enacted, § 4204 cannot apply. The Court would also note that the *Richland* decision, at 643, also considered the issue of pre-MPPAA withdrawal liability, and observed that "even though an employer may be held liable for its *own* pre-Act contribution history, it may not be held liable under most circumstances for the pre-Act contribution history of other employers." (Emphasis in original.)

### A. Did the Arbitrator Err as a Matter of Law in Applying Equitable Principles in the Arbitration Award?

The consideration of fairness and equity regarding the relationship between Rexall I and Rexall II in relation to the Fund raises an interesting issue, because there is no statutory language which is of particular assistance here. If there were such statutory language, the court, and the arbitrator in construing the MPPAA, would not be inclined to apply such an equitable doctrine, as the statutory provisions would constrain such application. See *Richland Industries Ltd. v. Robbins*, 617 F.Supp. at 645. Indeed the Seventh Circuit, in *Central States, Etc. v. Bellmont Trucking*, 788 F.2d 428, 434 (7th Cir.1986), considered and rejected an employer's argument that the imposition of withdrawal liability would result in unjust enrichment. The court rejected the argument on the ground that withdrawal liability had been mandated by a valid statute. There does not appear to be any general prohibition against the consideration of equitable principles within the statutory confines of MPPAA, as the primary limiting factor of course is the application of particular statutory provisions. This Court must conclude that such a statutory provision is lacking in these circumstances. Indeed, the Plaintiff employer here has invoked the anti-successorship doctrine to prevent application of equitable principles, but it, like equitable estoppel, finds its basis not in the statute but in judge-made law. See *Richland*, 617 F.Supp. at 641–42.

Returning to the general rule that estoppel principles generally apply to all legal actions and it is the exception in which the principles do not apply, there is authority regarding the general applicability of equitable principles within the ERISA statutory scheme. In *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990), the

Seventh Circuit discussed the applicability of estoppel in deciding ERISA issues and considered rulings from other circuits on the issue. That decision held that estoppel principles are applicable to claims for benefits under unfunded single employer welfare benefit plans under ERISA. The *Black* court arrived at its decision carefully, noting the circuit decisions which had disallowed the application of equitable principles in the ERISA context. In *Straub v. Western Union Tel. Co.*, 851 F.2d 1262 (10th Cir.1988), the Tenth Circuit rejected a retiree's argument for application of promissory estoppel, holding that "no liability exists under ERISA for purported oral modifications of the terms of an employee benefit plan." 851 F.2d at 1265 (citations omitted). Returning to the analysis in *Black*, that court stated carefully the limitations on applying equitable principles, noting that where estoppel has been generally disallowed is in the context of a multiemployer plan. The rationale for this reluctance stems from the multiple fiduciaries involved. The *Black* court noted at 115 that "to allow one employer to bind the fund to pay benefits outside the strict terms of the plan would be to make all the employers pay for one employer's misrepresentations ..." Of particular note here is the holding by the Tenth Circuit in *Straub* that estoppel may not effect a change in the written terms of a plan.

The issue before this Court does not concern a plan's terms, and consequently, *Straub* is not controlling in this context. In a similar manner, the comments in *Black* at 115, regarding multiemployer plans are also inapplicable for the reason that estoppel is raised here in the context of a statute relative to the withdrawal of a single employer, which bears no similarity to the concerns expressed in *Black*. For these reasons, the Court concludes that the arbitrator did not, as a matter of law, err in his application of equitable estoppel. As the court noted above, federal courts have considered such arguments, and there is no reason why an arbitrator, in construing the MPPAA, would be subject to a general

prohibition against applying equitable principles in the dispute resolution process. Certainly there is no such limitation which can be derived from the statute, and from the Court's analysis of case authorities, there is also no limitation applied to arbitrators where such limitation would not apply to judges.

**B. Did the Arbitrator Err in his Application of the Doctrine of Equitable Estoppel in these Circumstances?**

■ The Court's review of the arbitrator's application of equitable estoppel can properly be characterized as a mixed question of law and fact. Here the facts are undisputed, the Court has determined that the application of equitable estoppel was not improper as a matter of law, therefore this Court must now pass on the propriety of the application of that doctrine. A mixed question of law and fact can be described as a question in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated. *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982). As noted above, the arbitrator's factual finding are presumed correct,[1] however the clearly erroneous standard does not apply to questions of law or mixed questions of law and fact. *In re Yeates*, 807 F.2d 874, 877 (10th Cir.1986), citing *Jarboe v. United Bank (In re Golf Course Builders Leasing, Inc.)*, 768 F.2d 1167, 1169 (10th Cir. 1985); *Stafos v. Jarvis*, 477 F.2d 369, 372 (10th Cir.), *cert. denied* 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973).

This rejection by the Tenth Circuit of the clearly erroneous standard for mixed questions of law and fact may not be at odds with the statutory construct for arbitration under the MPPAA. In *Chicago Truck Drivers Pension Fund v. Louis Zahn Drug Co.*, 890 F.2d 1405, 1411 (7th Cir. 1989), the Seventh Circuit squarely ad-

---

**1.** 29 U.S.C. § 1401(c) states that "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator are correct."

dressed the question of which standard of review was appropriate for mixed questions of law and fact within the construct of MPPAA. That court noted the functional equivalence of the clearly erroneous and clear preponderance of the evidence standards, and in adopting the clearly erroneous standard for review of mixed question of law and fact, concluded that "contrary to the usual scheme in arbitration matters, Congress *did* intend that all legal determinations by an arbitrator by subject to de novo review." (Emphasis in original.) Consequently, the parties have a right to expect that the reviewing court will scrutinize fully the arbitrator's understanding of the underlying legal principles.[2]

This Court is acutely aware of the dearth of authority on this difficult question. It will attempt, therefore, to chart a middle ground between acknowledging deference due to the arbitrator's factual findings, and his conclusions of law which flow from those findings. Accordingly, this Court will apply the standard of review employed by the Tenth Circuit in *Jarboe v. United Bank,* 768 F.2d at 1169: where the facts are not in dispute and the findings of fact are not challenged, the reviewing court is only concerned with the legal conclusions to be drawn from the facts as found. (Citing *Colorado Springs National Bank v. United States,* 505 F.2d 1185, 1189 (10th Cir.1974).) The standard is appropriate in these circumstances because it is consonant with the type of review envisioned by MPPAA and the Plaintiff employer has challenged only very generally the findings of fact by the arbitrator as they concern this issue, but rather the focus of attack has rested on the arbitrator's power to rule with consideration given to equitable estoppel as well as other legal conclusions made by the arbitrator. As a result, the Court will now turn its attention to two legally significant facts in particular.

### 1. The Equitable Estoppel Doctrine Applied by the Arbitrator

The arbitrator noted that a waiver can be inferred not only from conduct but also from silence, and an estoppel may arise when a party fails to assert a right and knowingly permits another to act to his prejudice when the assertion of the right would have avoided the loss. Award at 44, citing *Minnesota Min. & Mfg. v. Kirkevold,* 87 F.R.D. 324, 335–36 (D.Minn.1980). This is the equitable estoppel which the arbitrator applied to make his findings and award. The arbitrator stated also "I have no difficulty finding that the requisite elements of both estoppel and waiver are present here and, particularly, that the facts show a waiver by Rexall II on any MPPAA-derived substantive right in favor of applying the anti-successorship doctrine to its purchase of Rexall I." *Id.*[3]

### 2. The Arbitrator's Conclusion That It Was Reasonable for the Plan to Assume It Could Get Potential Withdrawal Liability When It Was Not Notified of the Sale by Rexall I to Rexall II

■ Here the arbitrator considered that it was unlikely that a MPPAA plan would be aware of a pre-MPPAA sale which would form the basis of Plaintiff RXDC's argument to apply the anti-successorship doctrine. He also remarked that it was not unreasonable for a plan to assume it could rely on potential withdrawal liability from an employer as if a pre-MPPAA sale was not a factor. Award at 45–46. In further discussion, the arbitrator rejects RXDC's argument that it would have been pointless to challenge the two previous estimates of withdrawal liability because the Fund was "frozen into a posture of unqualified hostility toward the anti-successorship doctrine." Award at 47. Here the arbitrator appears

---

**2.** The *Chicago Truck Drivers* court also noted that "[t]he need for deference to the arbitrator's expertise is even more obvious on the issue of whether the seller sought to evade or avoid withdrawal liability. Matters of intent are particularly suited for resolution by the decision-maker with initial fact-finding responsibilities."

890 F.2d at 1412. The review here of the application of estoppel and its elements may not be fundamentally different.

**3.** This Court finds no infirmity with the particular version of the equitable estoppel doctrine applied by the arbitrator.

**1524**

to be addressing the waiver issue as well in noting that, had Rexall II raised it objections or otherwise notified the Fund at an earlier date, the arbitration could have been avoided. The fact that the sale by Rexall I to Rexall II[4] occurred prior to MPPAA is of little relevance in this context.

The Court will not set aside the factual determinations here as they appear to be fully substantiated from the record as a whole. Accordingly, as legally significant facts, these clearly support and provide support for the elements of equitable estoppel and waiver.

C. Whether the Arbitrator Was Required to Conclude as a Matter of Law that Since There Were No Unfunded Vested Benefits as of the End of the Year Preceding the Withdrawal, There Could be no Withdrawal Liability.

■■■ Finally, the Court must address the issue of whether the fact that the Plan had no UVB's would dictate a finding that there could be no withdrawal liability as a result. RXDC argues that since the Fund had no UVB's as of the year preceding its withdrawal, this fact would immunize it from any withdrawal liability. This question is analyzed in terms of legislative intent, as the statute itself does not make such a statement. On this particular question, there is conflicting authority among circuits. In *Berkshire Hathaway v. Textile Workers Pension Fund*, 874 F.2d 53 (1st Cir.1989), the court held that "Congress did not intend to impose withdrawal liability on employers in a fully funded plan." *Id.* at 56. The *Berkshire Hathaway* court also noted that if it considered the precise statutory provisions as ambiguous, then these circumstances would call for deference to the Pension Benefits Guaranty Corporation's interpretation of the statute. *Id.* at 54. However, the Fourth Circuit recently passed on this same question and provided a slightly different result. In *Wise v. Ruffin*, 914 F.2d 570 (4th

Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991), the Fourth Circuit reversed the district court's opinion in *Wise v. Ruffin*, 716 F.Supp. 213 (E.D.N.C.1989). The district court had held that an employer cannot be subject to withdrawal liability where the plan was fully funded (there were no UVB's) at the end of the preceding plan year, relying on the First Circuit's decision in *Berkshire Hathaway*, 874 F.2d at 54–55. In reversing the district court, the Fourth Circuit in *Wise v. Ruffin* offers a compelling analysis in noting two separate points:

> The language and logic of MPPAA as a whole and MPPAA's legislative history, however, support, rather than contravene, our decision to give effect to the statute's plain language....

> We simply cannot infer from the words 'allocable amount of unfunded vested benefits' the conclusion that Congress took care to account for all of the contingencies addressed in § 1391 but simply forgot to insert the sweeping provision that the absence of UVB's as of the end of the year preceding withdraw [sic] shuts off the elaborate § 1391 formulas.

914 F.2d at 575. That court examined the different methods of computing withdrawal liability which are described in the statute. Of particular note to the discussion here is the court's analysis of the *Berkshire Hathaway* decision. The *Wise* court noted that the method employed by the fund in the *Berkshire Hathaway* case was a variation of the direct allocation method, a method which contained explicit directives to base withdrawal computations on the year preceding withdrawal. The fund in the *Wise* decision used the modified presumptive method, which unlike the direct allocation method does not contain any limitation for considering only the year preceding withdrawal. Like the fund in *Wise*, the Defendant OCAW Fund employed a similar method which would not require inclusion of unfunded vested benefits amounts for the year preceding withdrawal only. See e.g., Award at 6.

4. This is so in light of § 4204 of ERISA, which mandates that sellers and purchasers be treated as separate employers (see Plaintiff's brief in support of summary judgment at 36).

This Court finds the Fourth Circuit's decision in *Wise v. Ruffin* very persuasive. In light of the circumstances of this case, the Court will adopt the Fourth Circuit's analysis and hold that the fact that the Plan may have had no UVB's as of the end of the year preceding Rexall II's withdrawal does not preclude the Fund from assessing withdrawal liability. In adopting this reasoning set forth in *Wise*, this Court need not consider the issue of what deference, if any, should be accorded the PBGC's pronouncement on this question. See *Wise v. Ruffin*, 914 F.2d at 580. This outcome is also consistent with *Ben Hur Construction Co. v. A.S. Goodwin*, 784 F.2d 876, 879 (8th Cir.1986) which held "MPPAA does not explicitly exempt employers from withdrawal liability under the attribution method if the plan as a whole has no unfunded vested benefits. (Citations omitted) ... [W]ithdrawal liability may be imposed upon an employer withdrawing from a multiemployer plan which has adopted the attribution method, even if the plan as a whole has no unfunded vested benefits."

Accordingly, this Court concludes that the arbitrator's decision upholding the Plan's withdrawal liability assessment will be AFFIRMED. The Court has examined the motions, briefs, and record before it and concludes that the arbitrator did not, as a matter of law, err in his application of the doctrine of equitable estoppel, and properly determined the application of the doctrine in light of relevant facts and that the fact that the Fund may have had no UVB's in the year preceding withdrawal does not dictate a finding that, as a matter of law, there could be no withdrawal liability. The Court will decline the request by RXDC (see brief in support of summary judgment at 47) that this Court rule on "the final issue" of which theory of segregating the vested benefits liabilities is appropriate, as the arbitrator made no particular ruling on this issue. This Court will not review this issue as no ruling was made, and the Court has otherwise affirmed the estoppel rulings by the arbitrator's award.[5]

Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED. The arbitration award is AFFIRMED.

With regard to Defendant's motion for interim payment, to the extent the motion is not mooted by the granting of the Fund's motion for summary judgment, it is GRANTED. RXDC shall now pay to the Fund the amount due and owing under 29 U.S.C. § 1132(g)(2).[6] As Plaintiff RXDC has failed to make payments pursuant to § 1401(d), RXDC's payment is delinquent. Accordingly, the Fund is entitled to payment pursuant to § 1132(g)(2), and the Fund shall submit an affidavit regarding its attorney's fees on or before February 11, 1992, and RXDC shall file any objections it may have to the affidavit on or before February 25, 1992.

---

5. In his award at 38, the arbitrator notes "it is unnecessary to resolve them [the methodology issues] explicitly at this time since I have also concluded that, under the particular circumstances of this case, the Fund must prevail on its estoppel argument."

6. The Court notes that RXDC's response in opposition to the Fund's motion for interim payment opposed only the payment of the funds prior to resolution of the cross-motions for summary judgment. RXDC did not otherwise respond to the motion.